IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**ELVIA CORDERO, as Personal Representative**
**of the ESTATE OF ROBERT MONTES,**

      **Plaintiff,**

      vs.                                  Civ. No. 13-0031 JCH/GBW

**TODD FROATS, PETER BRADLEY and**
**CODY AUSTIN, Individually and in Their**
**Official Capacity as Members of the Las**
**Cruces Police Department, and CITY OF**
**LAS CRUCES,**

      **Defendants.**


## MEMORANDUM OPINION AND ORDER

      This matter is before the Court on *Defendants' Motion for Qualified Immunity and Summary Judgment.* [Docs. 18-19]  Plaintiff filed a response [Doc. 25], and Defendants filed a reply [Doc. 27].

      Having reviewed the motion, briefs, evidence, and relevant caselaw, the Court concludes that Defendants' motion should be denied with respect to Counts I and II, and denied with respect to the excessive force claim under Count III.  The Court will grant Defendants' motion with respect to the spoliation claim under Count III, and with respect to the independent punitive damages claim in Count IV.

## BACKGROUND

The following is a statement of the facts relevant to the Motion, viewed in the light most favorable to Plaintiff.

Late at night on December 17, 2011, Robert Montes had tried to sell drugs to some people in an SUV. As Jessica Anto drove away, with Montes in the passenger seat, a police car tried to pull them over. Montes asked Anto to try to get away, but after she drove a short distance, three or four police cars stopped them.[1]

The officers, all from Las Cruces Police Department, approached with guns drawn, yelling something like "LCPD, get out of the car." Officers got Montes out of the car, handcuffed him, and searched him. The officers then got Anto out and handcuffed her. Officers also searched the car. They found scales and a handgun, which they placed on the roof of the car.

The officers had Montes sit on the hood of Anto's car, and placed Anto inside a police car. Montes then started to run, still in handcuffs. Officers started shooting, and Montes fell to the ground and died.
[Doc. 25, pp. 3-4]

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could have an effect on the outcome of the suit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party. *EEOC*

---

[1] Plaintiff asserts that the facts leading up to the stop are irrelevant, but makes no assertion that the stop was unreasonable. [Doc. 25, p. 2, ¶ 1]

2

*v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A defendant seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When, as in this case, the defendants do not have the burden of persuasion at trial, they can satisfy their burden at the summary judgment stage by identifying a lack of evidence on an essential element of the plaintiff's claim. *Id.* at 671. If the defendants satisfy their burden, the burden shifts to the plaintiff. *Id.*

The plaintiff cannot rest on his pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The plaintiff must "set forth specific facts" from which a rational trier of fact could find in the plaintiff's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671 (internal quotation marks omitted). The plaintiff cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 Fed. Appx. 887, 891 (10th Cir. 2010) (unpublished) (internal quotation marks omitted)[2]; *see Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003).

To survive a summary judgment motion in which the defendant claims qualified immunity, however, the analysis changes. The plaintiff must first carry the additional burden of

---

[2] The Court cites this and other unpublished opinions for their persuasive value. *See* 10th Cir. R. 32.1(A).

satisfying "a strict two-part test." *Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013). In considering whether the plaintiff has satisfied this test, the court still views the evidence in the light most favorable to the plaintiff. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (on reh'g *en banc*). The plaintiff must show that the defendant's actions violated a constitutional right, and that this right was "clearly established" at the time of the conduct. *Rojas*, 727 F.3d at 1003. A right is clearly established if the "'contours of the right'" are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A plaintiff can carry his burden of showing that a right is clearly established by identifying Supreme Court or Tenth Circuit caselaw on point, or by demonstrating that the weight of authority from other circuits shows the right to be clearly established. *Albright*, 51 F.3d at 1535. "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Rojas*, 727 F.3d at 1003 (internal quotation marks omitted; emphasis added).

"Qualified immunity is designed to shield public officials from liability and ensure 'that erroneous suits do not even go to trial.'" *Albright*, 51 F.3d at 1534. In addition, qualified immunity is designed to prevent government officials from facing the other burdens of litigation. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). The Supreme Court "has directed the lower federal courts to apply qualified immunity broadly, to protect from civil liability for damages all officers except 'the plainly incompetent or those who knowingly violate the law,'" so that officers "might not be unduly 'inhibit[ed] . . . in performing their official duties.'" *Wilson v. City of Lafayette*,

510 Fed. Appx. 775, 780 (10th Cir. 2013) (unpublished) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)).

The right to make an arrest or investigative stop "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). To establish a constitutional violation for use of excessive force, a plaintiff must demonstrate that the force used was objectively unreasonable. *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008). Reasonableness is evaluated under the totality of the circumstances, considering and balancing the following factors: "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). The court must "pay careful attention to the facts and circumstances of the particular case." *Estate of Larsen*, 511 F.3d at 1260. Officers may have "to make split-second judgments in uncertain and dangerous circumstances." *Thomson*, 584 F.3d at 1313 (internal quotation marks omitted). "A reasonable officer need not await the 'glint of steel' before taking self-protective action; by then, it is 'often … too late to take safety precautions.'" *Estate of Larsen*, 511 F.3d at 1260 (quoting *People v. Morales*, 603 N.Y.S.2d 319, 320 (N.Y. App. Div. 1993)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

The use of deadly force is "justified under the Fourth Amendment if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others." *Estate of Larsen*, 511 F.3d at 1260 (internal

5

quotation marks and emphasis omitted).  In such a situation, it may not be constitutionally unreasonable for officers to use deadly force to prevent a suspect's escape.  *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  In assessing the degree of threat, some of the factors to be considered include:  "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect."  *Estate of Larsen*, 511 F.3d at 1260.  The use of deadly force is not, however, reasonable "to prevent the escape of an apparently unarmed suspected felon . . . unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."  *Garner*, 471 U.S. at 3.  When a suspect "poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so"—even if officers have probable cause to believe that the suspect has committed a felony.  *Id.*

## DISCUSSION

Defendants move for summary judgment on all four counts of the Complaint.

**I.  Count I—Excessive Force under § 1983**

Defendants argue that they are entitled to qualified immunity on the excessive force claim.  According to Defendants' factual allegations, officers had no reason to suspect Montes had committed a crime and therefore did not handcuff Montes, but asked Montes to sit on the hood of the car.  [Doc. 19, pp. 5-6, ¶¶ 20, 22]  Defendants allege that Montes got off the hood of the car, ran to the open passenger side door, and reached under the passenger seat.  [Doc. 19, pp. 6-7, ¶¶ 30-32]  Defendants allege that one officer attempted to tase Montes, but Montes

nevertheless pulled out a pistol and shot at the officers before running away, still armed and not handcuffed. [Doc. 19, pp. 7-8, ¶¶ 31, 35-37, 40]

Plaintiff disputes the allegations that: Montes was not handcuffed, Montes grabbed a gun before he ran away, and Montes fired at officers. [Doc. 25, pp. 2-3] Plaintiff argues that the facts viewed in the light most favorable to Plaintiff show that Montes was in handcuffs and unarmed, posing no threat of serious harm to anyone, when he ran away from police and they shot him. [Doc. 25, p. 4]

Plaintiff's Response attached two unsworn and unsigned "affidavits" in support. [Docs. 25-1, 25-2] Defendants argued in their Reply that they were entitled to summary judgment because the Court could not consider such documents. [Doc. 27, pp. 1-4] After the Reply was filed, however, Plaintiff filed a *Notice of Supplementation of Exhibits* attaching the same two "affidavits," which had been dated and signed under penalty of perjury. [Docs. 32, 32-1, 32-2] Although these unnotarized documents would be more appropriately labeled as "declarations" than "affidavits," they are sufficient under Rule 56(c)(4) as declarations "subscribed in proper form as true under penalty of perjury." Fed. R. Civ. P. 56(c)(4) advisory committee's note to 2010 amendments; *see* 28 U.S.C. § 1746; *Richardson v. Gallagher*, 553 Fed. Appx. 816, 827 (10th Cir. 2014) (unpublished). Rule 56 no longer requires formal affidavits. *See* Fed. R. Civ. P. 56(c)(4) advisory committee's note to 2010 amendments. The Court will refer to these documents as "affidavits," however, since both parties do so.

### A. Violation of a Constitutional Right

The first part of Plaintiff's burden, after Defendants claimed qualified immunity, was to show that Defendants committed a constitutional violation—the use of excessive force.[3] *See*

---

[3] The Complaint cites the Fourth, Fifth, and Fourteenth Amendments, but does not differentiate separate arguments—simply claiming unreasonable use of deadly force.

*Rojas*, 727 F.3d at 1003. The Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). In qualified immunity cases, the court "ordinarily … must 'adopt' plaintiff's 'version of the facts.'" *Thomson*, 584 F.3d at 1325 (Holmes, J., concurring) (quoting *Scott*, 550 U.S. at 380). But the plaintiff's version of the facts must be supported by the record. *Scott*, 550 U.S. at 378; *Thomson*, 584 F.3d at 1325 (Holmes, J., concurring); *Tellez v. City of Belen*, 560 Fed. Appx. 812, 814 (10th Cir. 2014) (unpublished). The court must "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* question before the court." *Thomson*, 584 F.3d at 1326 (Holmes, J., concurring)..

Plaintiff provided two affidavits. Anto's and Marquez's affidavits set forth their observations in chronological order. Both state that officers handcuffed Montes, that officers had Montes sit on the hood of Anto's car, and "then" Montes started to run—with his hands still cuffed. Anto states that she next "heard pops and saw sparks," before Montes "fell on his face, his hands still cuffed behind him." [Doc. 32-1, p. 1, ¶ 8] Marquez states that officers "sat [Montes] on the front of the car," he "got off the front of the car and started to run" and "was still running with his hands handcuffed behind his back when the police started shooting him." [Doc. 32-2, p. 1, ¶¶ 6-7]

Both affidavits list, in chronological order, what Anto and Marquez saw and heard. The Court finds that the clear implication from these affidavits is that—according to Anto and Marquez—Montes did not get a gun and did not shoot at the officers before they fired at, and killed, him. *See Scott*, 550 U.S. at 378 (stating that record on summary judgment motion is

viewed in light most favorable to non-movant, allowing all reasonable inferences in favor of non-movant); *Cortez*, 478 F.3d at 1114 (stating that in applying two-part test applicable on qualified immunity claim, court still views record in light most favorable to non-movant). For affiants to list their observations, but to omit stating obviously critical facts, would render the affidavits and Plaintiff's Response blatantly deceptive. Here, a reasonable jury could infer based upon Anto's and Marquez's statements that Montes was in handcuffs, and did not get a gun and shoot at officers, but ran away as soon as he got up from the hood of the car. The Court notes that the affidavits suggest that both Anto and Marquez were in a position to observe the critical events; Anto and Marquez describe events both before and after Montes got up from the hood of the car. The Court concludes that Plaintiff's version of the facts "is sufficiently grounded in the record such that [it] may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* question before the court." *Thomson*, 584 F.3d at 1326 (Holmes, J., concurring).

Defendants' Reply correctly points out that neither Anto's nor Marquez's affidavit expressly states that Montes did not have a gun and did not fire first at the officers. [Doc. 27, p. 9] As Defendants observe, Anto's affidavit does not expressly state "that she saw all the events leading up to the shooting," and Marquez's affidavit "neither affirmatively avers that Montes did not shoot at the Officers first nor states that he was unarmed or incapable of shooting." [Doc. 27, p. 9] But to assume that Anto and Marquez would state their observations on important facts, but omit what are obviously critical facts—whether Montes grabbed a gun, and whether Montes shot at officers before they shot at him—would make these affidavits intentionally deceptive. The Court will not assume or infer such deception.

In addition, Anto's and Marquez's affidavits both state that Montes was handcuffed. The affidavits both state that Montes's hands were cuffed behind his back when he started to run and officers shot at him. [Doc. 32-1, p. 1, ¶ 8; Doc. 32-2, p. 1, ¶ 7] Plaintiff's statement of additional material facts does not state that Montes's hands were behind his back, but Plaintiff's Response does. [Doc. 25, pp. 3-4, 6] These allegations reinforce the Court's determination that a reasonable jury could infer that Montes did not get a gun and shoot at officers, which would have been difficult to do in handcuffs.

Defendants' qualified immunity argument depends upon Defendants' factual allegations—that Montes grabbed a gun, refused to drop it, did not respond to being tased, and shot at officers. Plaintiff did not separately dispute each of the critical allegations and respond individually to each allegation. Instead, Plaintiff grouped the allegations together, stating that he disputed them to the extent that they allege that Montes was not handcuffed, that Montes grabbed a gun, and that Montes fired at officers. [Doc. 25, p. 2, ¶¶ 2-3] Plaintiff further disputed Defendant's allegations by setting forth his own "statement of additional material facts," a chronological statement of facts which alleges that Montes was handcuffed and which does not include Montes getting a gun or shooting at officers. [Doc. 25, pp. 3-4, ¶¶ 4, 6, 8, 10-11] The Court concludes that Plaintiff clearly and adequately disputed the critical allegations. *Cf. Walker v. City of Orem*, 451 F.3d 1139, 1156 (10th Cir. 2006) (determining that district court could consider plaintiff's statement of additional facts, even when plaintiff did not specifically dispute each of defendant's factual allegations).

Plaintiff's version of the facts, as related above in the "Background" section, thus constitutes the basis for the Court's determination of whether Plaintiff has adequately asserted violation of a constitutional right. The Court considers factors relevant to evaluating the

reasonableness of the force:  the severity of the crime at issue, whether Montes posed an immediate threat to the safety of Defendants or others, and whether Montes was "actively resisting arrest or attempting to evade arrest by flight." *Thomson*, 584 F.3d at 1313.

Under Plaintiff's version of the facts, officers did not suspect Montes of committing any crime, much less a serious crime.  One of Defendants' factual allegations supports this conclusion—stating that Officer Bradley had "no reason to suspect Montes had committed a crime"; officers apparently suspected only Anto of a crime.  [Doc. 19, p. 6, ¶ 22]  Under Plaintiff's version of the facts, Defendants did not have probable cause to believe that Montes presented a threat of serious physical harm to Defendants or to others; Montes was just trying to run away.  With respect to the third factor, although Montes was attempting to run away, it is not clear that fleeing constituted "actively resisting arrest or attempting to evade arrest by flight"—because it does not appear that Montes was facing arrest; even under Defendants' factual allegations, they had "no reason to suspect Montes had committed a crime."  [Doc. 19, p. 6, ¶ 22]

Since Montes was unarmed and posed no immediate threat to Defendants or others, "the harm resulting from failing to apprehend him [did] not justify the use of deadly force to do so"— even if there had been probable cause to believe that Montes had committed a felony. *Garner*, 471 U.S. at 3.  And there was no reason to suspect that Montes had committed any crime—much less a felony or other serious crime.  Balancing the relevant factors, under the totality of the circumstances, the Court concludes that it was objectively unreasonable for the officers to use deadly force when Montes ran away.  Plaintiff therefore has adequately asserted a constitutional violation.  There is no question that it was "clearly established" that it was unconstitutional to use deadly force to prevent the escape of an apparently unarmed person, suspected of no crime at all, who posed no threat to officers or others.  *See Garner*, 471 U.S. at 3.

Defendants' Reply argues, however, that the Court should not rely on Plaintiff's factual allegations because they are not "sufficiently grounded in the record," but instead are "blatantly" contradicted by the record.  *See Thomson*, 584 F.3d at 1325 (Holmes, J., concurring). Defendants correctly observe that Plaintiff's "version of the facts cannot be 'so utterly discredited by the record that no reasonable jury could have believed' it."  *Thomson*, 584 F.3d at 1325 (Holmes, J., concurring) (quoting *Scott*, 550 U.S. at 380).  Defendants make three arguments that incontrovertible evidence blatantly contradicts Plaintiff's affidavits.

First, Defendants argue that the forensic evidence "undeniably and conclusively determined that the gun recovered from Robert Montes fired the bullet that investigators recovered in the wall of a nearby office building." [Doc. 27, p. 6]  Defendants refer to their allegations that: a .357 magnum revolver was found near Montes's body when Detective Rosa arrived at the scene—sometime after the shooting occurred; and a bullet identified as being fired from that revolver was found in a nearby wall. [Doc. 19, pp. 9-10, ¶¶ 51-59]  Rather than disputing Defendants' factual allegations on these points, Plaintiff claims that they are irrelevant to the summary judgment motion. [Doc. 25, p. 3]  The Court disagrees with Defendants' contention that their allegations blatantly contradict Plaintiff's affidavits.  Defendants' allegations regarding the forensic evidence do not establish that it was Montes who fired that gun, nor do they show that Montes fired that gun at officers *before* officers shot at Montes.  Even undisputed, these allegations do not "so utterly discredit" Plaintiff's version of the facts that no reasonable jury could believe it.  *See Thomson*, 584 F.3d at 1325 (Holmes, J., concurring).

Second, Defendants argue that the audio recording and written transcript they attached as exhibits "objectively document[ ] the threat Montes posed." [Doc. 27, p. 7; Doc. 19-1, pp. 7-11; Doc. 20 (Exhibit A, Attachment 2)]  Plaintiff does not dispute the authenticity of this recording

or the written transcript, and makes no argument about the recording in his Response. While the Court acknowledges that this recording is fully consistent with Defendants' argument, the Court finds that the recording does not meet the high standard of "so utterly discrediting" Plaintiff's version of events that no reasonable jury could believe Plaintiff's version. It is not possible to be certain from the audio recording who is speaking and just what is happening when. The written transcript attributes to a "Male" two statements of "Fuck you," with an officer demanding, "Let me see your hands now"—but the audio recording cannot show that the "Male" has grabbed a gun and shot it at officers *before* officers began shooting. [Doc. 19-1, p. 10] After the shooting is over, Austin says, "He has a gun"—but the audio recording does not show that Montes in fact had a gun, that Montes shot a gun, and that Montes shot a gun *before* officers began shooting. It is not even clear that this "Male" is Montes, rather than some other male present at the scene. In addition, the statement "Fuck you" attributed by Defendants to Montes is not sufficient in itself to constitute a threat to shoot officers, or to show that Montes had a gun.

Third, Defendants argue that the taser videos show that Montes reached into the car and that Officer Austin tased Montes in an attempt to subdue him. [Doc. 27, p. 8] Defendants further argue that the taser videos shows that Montes was not handcuffed with hands behind his back, or his hands would have been in view. The taser videos may be consistent with Defendants' argument—but the Court again concludes that they cannot meet the standard of "utterly discrediting" Plaintiff's version. The taser videos are so unclear that it is not possible to see just what is happening, much less identify the participants.

Having carefully reviewed the record evidence, the Court finds that Plaintiff's version of events is not "so utterly discredited" by the record that no reasonable jury could believe Plaintiff's version. *See Thomson*, 584 F.3d at 1325 (Holmes, J., concurring). The Court

13

therefore relies on Plaintiff's version of events in determining whether Plaintiff has carried his burden of showing that Defendants violated a constitutional right, by using excessive force. *See id*. at 1325-26. Since Plaintiff's factual allegations "are sufficiently grounded in the record," they "comprise the universe of facts" that serve as the foundation for this determination. *Id*. The Court concludes that Plaintiff has carried his heavy two-part burden of showing that Defendants' actions violated a constitutional right, which was "clearly established" at the time. *See Rojas*, 727 F.3d at 1003.

The burden then shifted back to Defendants, to show that there is no genuine dispute as to material facts and that they are entitled to judgment as a matter of law. *Thomson*, 584 F.3d at 1326 (Holmes, J., concurring). Defendants have not carried the "traditional summary judgment burden of establishing that there are no genuine issues of material fact for jury resolution and that [they are] entitled to judgment as a matter of law." *Id*. Defendants' exhibits and Defendants' undisputed allegations cannot satisfy the burden to show there was no genuine issue as to whether Montes was handcuffed, whether Montes grabbed a gun, and whether Montes shot first at the officers.

The Court concludes that Defendants have not shown that they are entitled to summary judgment on Count I.

## II.  Count II—New Mexico Tort Claims Act

The Complaint asserts a claim under the New Mexico Tort Claims Act, alleging that the officers' use of deadly force was "grossly negligent." NMSA 1978, §§ 41-4-1 to -30 (2010) ("NMTCA").

Defendants state that "gross negligence" is not a tort enumerated under the NMTCA for which the legislature waived immunity. The NMTCA waives immunity for certain conduct of law enforcement officers:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

Section 41-4-12; *see* § 41-4-4 (granting immunity from tort liability and authorizing exceptions). The NMTCA waives immunity only for specified torts or violations committed by law enforcement officers. *Caillouette v. Hercules, Inc.*, 1992-NMCA-008, ¶¶ 15-21, 827 P.2d 1306, 1310-11; *see Tafoya v. Bobroff*, 865 F. Supp. 742, 747 (D.N.M. 1994). In *Caillouette*, the New Mexico Court of Appeals rejected the plaintiff's argument that the law enforcement officer's negligence deprived the decedent of his right to have certain laws enforced under a New Mexico statute and the New Mexico Constitution; the *Caillouette* Court concluded that such a broad interpretation of the waiver of immunity would eliminate the principle of sovereign immunity, contrary to the legislature's intent in Section 41-4-12. *Caillouette*, 1992-NMCA-008, ¶¶ 20-21, 827 P.2d at 1311.

Defendants correctly recognize, however, that a claim for excessive force has been recognized as essentially a claim of the common law tort of battery, for which the NMTCA does waive immunity. [Doc. 19, p. 18 (citing *Hernandez ex rel. Estate of Medrano v. Frias*, 2011 WL 1127882, *25 (D.N.M. 2011))] Defendants then argue that they are nevertheless entitled to summary judgment under the NMTCA for the same reason they are entitled to qualified

immunity under Count I: if officers did not use excessive force, they are not subject to a battery claim for use of unreasonable force.

The Court concludes that Defendants have not shown that they are entitled to summary judgment on Count II, for the same reason they are not entitled to summary judgment on Count I.

### III. Count III—Liability of City of Las Cruces

Plaintiff asserts claims under federal and state law for the City's alleged failure to train and supervise officers regarding the use of force. Count III also asserts a claim of "spoliation of evidence."

#### A. Excessive force under § 1983

There is no *respondeat superior* liability under § 1983. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). The City of Las Cruces may be held liable "only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). To establish a claim under § 1983 against the City for the acts of Defendants, Plaintiff must prove: (1) that a Defendant committed a constitutional violation, and (2) that a policy or custom of the City was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In addition, Plaintiff must show that an alleged failure to train or supervise amounted to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Defendants argue that they are entitled to summary judgment on a municipal liability claim for excessive force because no officer committed a constitutional violation, as they argued in relation to Count I. [Doc. 19, p. 19] As the Court concluded under Count I, however, based

on Plaintiff's version of events, Plaintiff has carried his burden to show a constitutional violation—use of excessive force under the Fourth Amendment. For this reason, Defendants have not shown that they are entitled to summary judgment on this claim.

### B. Excessive force as a battery under NMTCA

Defendants argue that they are entitled to summary judgment on the NMTCA claim under Count III "because the undisputed facts do not establish any of the Officers committed the tort of battery under the NMTCA through their grossly negligent conduct," as Defendants argued in relation to Count II. [Doc. 19, p. 20] As discussed above, however, based on Plaintiff's version of the facts, the Court concludes that Plaintiff has carried his burden to show that Defendants committed a battery. Defendants have therefore not shown that they are entitled to summary judgment on this claim.

### C. Spoliation of evidence

The Complaint asserts a claim of spoliation of evidence based on the City's alleged failure to require officers to make audio recordings of all encounters with suspects, in accordance with "the *Estrada* settlement." [Doc. 1, p. 4, ¶¶ 16, 18]

Defendants' Motion argues that spoliation of evidence is not a viable claim under the NMTCA, because the NMTCA does not waive immunity for the tort of spoliation of evidence. [Doc. 19, p. 20] Defendants also observe that Austin did make an audio recording of the encounter. [Doc. 19, pp. 20-21; Doc. 19-1, pp. 7-11]

Plaintiff made no response to either argument. The Court concludes that Plaintiff concedes that Austin's recording shows that there was compliance with "the *Estrada* settlement." Even if Plaintiff had not made this concession, Plaintiff failed to carry his "heavy" burden to show that Defendants' actions violated a constitutional right, and that the asserted right was

17

"clearly established" at the time. *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013); *Rojas*, 727 F.3d at 1003.  Defendants are therefore entitled to qualified immunity to the extent that Plaintiff attempted to make a claim of constitutional violation for spoliation.

The Court further concludes that Defendants are entitled to summary judgment to the extent that Plaintiff asserts a tort claim of spoliation.  New Mexico recognizes the tort of intentional spoliation of evidence, with the following elements:  "(1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3) the destruction, mutilation, or significant alteration of potential evidence; (4) intent on part of the defendant to disrupt or defeat the lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages."  *Coleman v. Eddy Potash, Inc.*, 1995-NMSC-063, ¶ 13, 905 P.2d 185, 189, *overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 34 P.3d 1148.  Intentional spoliation requires proof of not merely an intentional act, but malicious intent to harm.  *Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶ 48, 987 P.2d 385, 404-05, *overruled on other grounds by Herrera v. Quality Pontiac*, 2003-NMSC-018, 73 P.3d 181.  New Mexico does not recognize a tort of negligent spoliation of evidence.  *Id*. ¶ 42, 987 P.2d at 402-03.  Plaintiff did not designate facts to support a claim of malicious intent to harm, and did not argue that a failure to make an audio recording would satisfy the element of "destruction, mutilation, or significant alteration of potential evidence."

More important, there is no waiver of immunity under the NMTCA for the tort of spoliation of evidence.  *See* NMSA 1978, § 41-4-12; § 41-4-4 (granting immunity from tort liability and authorizing exceptions).  As discussed above, the NMTCA waives immunity only for specified torts or violations committed by law enforcement officers.  *Caillouette*, 1992-NMCA-008, ¶¶ 15-21, 827 P.2d at 1310-11; *see Tafoya*, 865 F. Supp. at 747.

Plaintiff's claim of spoliation of evidence asserts neither one of the specified torts nor a constitutional violation; therefore, the NMTCA does not waive immunity. The Court concludes that Defendants have shown that they are entitled to summary judgment on the spoliation claim under Count III.

### IV. Count IV—Punitive Damages

Defendants argue that they are entitled to summary judgment on Count IV. To the extent that Defendants argue for judgment because they are entitled to qualified immunity, the Court disagrees; the same disputed issues of material fact precluding summary judgment on Count I preclude judgment on Count IV.

Defendants also argue that punitive damages are not available under the NMTCA, and further that the Complaint's assertion of punitive damages does not state a separate cause of action. [Doc. 19, p. 21] The Court agrees that a request for punitive damages does not constitute a separate cause of action. *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1271 (D.N.M. 2010). The Court will therefore grant Defendants' motion as to Count IV being asserted as an independent cause of action. The Court dismisses Count IV as a separate count, but makes no ruling at this time on whether Plaintiff may recover punitive damages, depending on what occurs in future proceedings.

### CONCLUSION

The Court concludes that Defendants have not carried their burden to show that there are no genuine disputes as to material facts, and have not shown that they are entitled to judgment as a matter of law on all counts.

The Court denies Defendants' summary judgment motion with respect to Counts I and II, and with respect to the excessive force claim under Count III.  The Court grants Defendants' summary judgment motion with respect to the spoliation claim under Count III and with respect to the independent cause of action for punitive damages under Count IV.

**IT IS THEREFORE ORDERED THAT:**

*Defendants' Motion for Qualified Immunity and Summary Judgment* [Doc. 18] is **DENIED IN PART** and **GRANTED IN PART**, as discussed above.

_____
**UNITED STATES DISTRICT JUDGE**