## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ELVIA CORDERO, as Personal Representative**
**of the ESTATE OF ROBERT MONTES,**

        **Plaintiff,**

    **vs.**                                                   **Civ. No. 13-031 JCH/GBW**

**TODD FROATS, PETER BRADLEY, JOSE**
**SANCHEZ, and CODY AUSTIN, Individually**
**and in Their Official Capacity as Members of**
**the Las Cruces Police Department, and CITY**
**OF LAS CRUCES,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Officer Jose Sanchez's Motion To Dismiss Amended Complaint (Doc. 71).*  [Doc. 78]  The First Amended Complaint ("FAC") adds Jose Sanchez as a Defendant, adds new factual allegations, and adds several claims.  Sanchez moves to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff filed a response [Doc. 90], and Sanchez filed a reply [Doc. 97].

Having reviewed the motion, briefs, and relevant law, the Court concludes that the motion should be granted in part and denied in part.  The Court will dismiss Sanchez as a Defendant, but will not dismiss the amended complaint itself.

## FACTUAL BACKGROUND

The following is a statement of factual allegations in the First Amended Complaint ("FAC").  [Doc. 71]

On December 17, 2011, the Individual Defendants were involved in a stop of a vehicle driven by Jessica Anto, in which Robert Montes was a passenger.

Defendant Sanchez and other officers were advised that the occupants of the Anto vehicle might have been involved in some type of altercation at a nearby apartment.[1]  About six minutes before the stop, radio traffic announced there was no evidence of any fight or altercation at that apartment.  Neither Sanchez nor any other law enforcement officer witnessed Anto or Montes commit any misdemeanor or other crime before the vehicle was stopped.  Despite the fact that no officer had witnessed Anto or Montes commit any crime, Anto was removed from the vehicle against her will, was handcuffed by Sanchez, and was placed in Sanchez's unit.

During the stop, officers placed Montes in investigative detention, during which time they removed him from the vehicle and placed him in handcuffs.  After a short time, Montes got up and tried to run away from the scene.  As he ran, handcuffed, the individual Defendants shot and killed him.

## PROCEDURAL BACKGROUND

Plaintiff filed the original complaint on January 11, 2013, against:  Todd Froats, Peter Bradley, and Cody Austin (current or former employees of the Las Cruces Police Department) in their individual and official capacities; and also against the City of Las Cruces ("City").  [Doc. 1] The original complaint asserted three claims:  (1) Count I—excessive force causing the death of Montes, in violation of his federal constitutional rights; (2) Count II—gross negligence in use of deadly force under the New Mexico Tort Claims Act ("NMTCA"); (3) Count III—supervisory liability of the City and spoliation of evidence; and (4) Count IV—an independent claim of punitive damages.  [Doc. 1]

---

[1] The allegations in this paragraph were not in the original complaint, but were added in the FAC.

Defendants moved for qualified immunity and summary judgment.  [Doc. 18]   On January 9, 2015, the Court issued a Memorandum Opinion and Order.  [Doc. 34]   The Court denied Defendants qualified immunity, thus denying summary judgment on Counts I and II, and denying summary judgment with respect to the excessive force claim under Count III.  The Court granted Defendants' motion for summary judgment on Count III with respect to the spoliation of evidence claim.  The Court granted Defendants' motion as to the assertion of punitive damages under Count IV as an independent cause of action; the Court dismissed Count IV as a separate count, but made no ruling on the availability of punitive damages in future proceedings.

Defendants filed for interlocutory appeal on February 9, 2015.  [Doc. 37]

On April 1, 2015, the Court granted Defendants' motion for a stay of all proceedings pending Defendants' interlocutory appeal.  [Doc. 38]

On September 2, 2015, the Tenth Circuit issued an Order dismissing Defendants' interlocutory appeal for lack of jurisdiction.  [Doc. 50]  On September 3, 2015, this Court lifted the stay on discovery.  [Doc. 51]  On September 24, 2015, the Tenth Circuit issued its Mandate. [54]

On December 4, 2015, Plaintiff filed a motion to amend the complaint, adding Sanchez as a Defendant and making additional changes.   [Doc. 65]   Defendants filed a response, stipulating to filing of an amended complaint under the following conditions:  (1) Count III's claim for spoliation and Count IV's claim for an independent cause of action for punitive damages must be removed, based on this Court's January 9, 2015, Memorandum Opinion and Order [Doc. 34]; (2) Officer Sanchez shall not waive any defense by virtue of this stipulation— including any claims based on sufficiency of the complaint, statute of limitations, relation back to the original filing date, or notice under Federal Rule of Civil Procedure 15.  [Doc. 67]  Based on this agreement, the Court issued the *Stipulated Order Granting Plaintiff's Motion To File*

*First Amended Complaint (Doc. 65).* [Doc. 70 (filed 1/6/16)] On January 7, 2016, Plaintiff filed

the First Amended Complaint ("FAC").[2] [Doc. 71]

## LEGAL STANDARDS

On a motion to dismiss, the court assesses the legal sufficiency of the allegations

contained within the four corners of the complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281

(10th Cir. 2008). Rule 8 requires the complaint to contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as

true all well-pleaded facts, viewing them in the light most favorable to the plaintiff and allowing

all reasonable inferences in favor of the plaintiff. *Archuleta*, 523 F.3d at 1283. This deference is

inapplicable to legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court "should disregard all conclusory statements of law and consider whether the remaining

specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."

*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see Iqbal*, 556 U.S.

at 678. The court does not accept as true a legal conclusion couched as a factual allegation. *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint "does not need detailed factual allegations," but the factual allegations

"must be enough to raise a right to relief above the speculative level." *Id.* The complaint must

go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

678. Conclusory statements unsupported by factual allegations are not sufficient. *Id.*; *Hall v.*

*Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see*

*Twombly*, 550 U.S. at 555 (holding that mere "labels and conclusions" and "formulaic recitation

---

[2] The FAC deleted the spoliation claim and Count IV, as stipulated. The Court notes, however, that an additional undiscussed change was made from the proposed amended complaint [Doc. 65-1] attached to Plaintiff's motion [Doc. 65]; the FAC filed also deleted ¶¶ 22-23 of the proposed amended complaint [Doc. 65-1, p. 5, ¶¶ 22-23].

of the elements of a cause of action" are insufficient); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The allegations of fact must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Archuleta*, 523 F.3d at 1281, 1283.   "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."   *Robbins*, 519 F.3d at 1247.   The Tenth Circuit observed that "plausible" cannot mean "likely to be true," but "must refer to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"   *Id.* (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

The FAC asserts three claims:  (1) Count I—excessive force causing the death of Montes, and unconstitutional stop and seizure, in violation of Montes's federal constitutional rights, asserted against the individual Defendants; (2) Count II—gross negligence in use of deadly force, and unconstitutional stop and seizure, under the New Mexico Tort Claims Act ("NMTCA"), asserted against the individual Defendants and the City; and (3) Count III— supervisory liability of the City on both the constitutional and the NMTCA claims.  [Doc. 71] The FAC adds Jose Sanchez as a Defendant.

Sanchez filed the motion to dismiss the FAC under Rule 12(b)(6), arguing:  (I) the statute of limitations has expired and the new claims against Sanchez do not relate back to the date of the original complaint; and (II) the FAC fails to state a claim against Sanchez.

## I.  Statutes of Limitations and Relation Back Under Rule 15

### A.  Expiration of statutes of limitations

It is undisputed that the incident underlying the FAC occurred on December 17, 2011, as alleged in the FAC and in the original complaint.  The FAC added Sanchez as a Defendant. Sanchez moves to dismiss the FAC, arguing that the statutes of limitations expired before the FAC was filed.

"Statutes of limitations reflect a balancing of the interest favoring the vindication of valid claims and the interest barring the prosecution of stale ones." *Fogle v. Slack*, 419 Fed. Appx. 860, 865 (10th Cir. 2011) (unpublished).[3]  § 1983 does not contain a statute of limitations.  This Court takes the statute of limitations from New Mexico's personal injury statute, providing a limitations period of three years from the time the cause of action accrues.  *Wilson v. Garcia*, 471 U.S. 261, 280 (1985), *aff'g Garcia v. Wilson*, 731 F.2d 640 (10th Cir. 1984), *superseded by statute on other grounds*, 28 U.S.C. § 1658; *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014); *see* NMSA 1978, § 37-1-8 (1976).  Federal law determines the date on which the claim accrues.  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  The Tenth Circuit treats the statute of limitations under § 1983 as an affirmative defense, an issue which can properly be resolved under Rule 12(b)(6) when the relevant dates in the complaint are accepted.  *Canfield v. Douglas Cty.*, 619 Fed. Appx. 774, 776 (10th Cir. 2015) (unpublished).

"In general, under the federal discovery rule, claims accrue and '[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'"  *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)).  In particular, a "civil rights action accrues when facts that would support a cause of action are or should be apparent."  *Id.* (internal quotation marks omitted).  The plaintiff need not have conclusive evidence of the cause of injury, or know all of

---

[3] The Court cites this and other unpublished opinions for their persuasive value.  *See* 10th Cir. R. 32.1(A).

the evidence ultimately relied on, before the statute of limitations is triggered. *Nicholas v. Boyd*, 317 Fed. Appx. 773, 778 (10th Cir. 2009) (unpublished).  The test for date of accrual is objective, with the focus "on whether the plaintiff knew of facts that would put a reasonable person on notice." *Alexander*, 382 F.3d at 1216.  The plaintiff "must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Id*.  The "'cause of action accrues even though the full extent of the injury is not then known or predictable.'" *Varnell*, 756 F.3d at 1216 (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).  Otherwise, the statute of limitations "would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391.

The Court agrees with Sanchez that Plaintiff's cause of action accrued on December 17, 2011, the date on which Montes was shot and died.  Plaintiff's motion to amend was filed on December 4, 2015, and the FAC was filed on January 7, 2016.  Thus the three-year statute of limitations for constitutional claims under § 1983 had expired before the claims were filed against Sanchez.

The statute of limitations had also run for claims under the NMTCA.  As Sanchez argues, Section 41-4-15 of the NMTCA "forever bars" tort claims against a public employee unless the action is commenced within two years of the "date of occurrence resulting in loss, injury or death."  "Once a plaintiff has discovered his or her injury and the cause of that injury, the statute of limitations begins to run." *Maestas v. Zager*, 2007-NMSC-003, ¶ 22, 152 P.3d 141, 148.  A cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause, even if the full extent of injury is not yet known. *Id*. ¶ 22, 152 P.3d at 147-48.  In a case in which the plaintiff knows at the time of death the nature and cause of the injury, the death alone triggers the running of the statute of limitations under the NMTCA.

*Id*. ¶ 23, 152 P.3d at 148.  In this case, the NMTCA statute of limitations began to run on December 17, 2011, and expired before the claims were filed against Sanchez.

### B.  Relation back under Rule 15

Sanchez argues that the claims against him do not relate back under Rule 15(c) because he did not receive the required notice and he did not know, nor should he have known, that "but for a mistake" of identity he would have been named as a party.

Plaintiff contends in response that she had little opportunity for discovery because of stays on discovery, and that she was diligent in filing to amend once she learned of Sanchez's involvement.  Plaintiff argues that the Court should therefore allow amendment under the liberal standard of Rule 15(a)(2), and that amendments to claims generally relate back.

### (1)  Discovery stays and Plaintiff's diligence

Plaintiff observes that discovery was stayed pending resolution of Defendants' assertion of qualified immunity, and stayed again when Defendants appealed the Court's denial of that motion.  Plaintiff argues that:  at the time she filed suit, she did not know "the nature and extent of Defendant Sanchez' role in the events which led to the detention and shooting"; she only learned in discovery taken in October 2015 that "Sanchez had participated in an illegal stop and detention of the vehicle"; and she "filed her motion to amend the complaint as quickly as possible." [Doc. 90, pp. 2, 4]

On May 21, 2013, Defendants filed their motion for summary judgment and qualified immunity. [Doc. 18]  On the same date Defendants filed a motion to stay discovery. [Doc. 21]  Noting that Plaintiff filed no response to the motion to stay discovery, and Plaintiff did not otherwise challenge a stay, this Court granted the stay on June 21, 2013. [Doc. 30]  On January 9, 2015, the Court resolved Defendants' summary judgment motion, denying qualified immunity and in part denying summary judgment. [Doc. 34]

On January 27, 2015, Plaintiff filed a motion to lift the stay on discovery, which the Court granted just two days later.  [Docs. 35, 36]  A week and a half later, Defendants filed their notice of appeal and another motion to stay discovery.  [Docs. 37, 38 (filed 2/9/15)]  Plaintiff's response opposed a stay, arguing that Defendants had no right to appeal a factual issue and requesting that the Court certify the appeal as frivolous.  [Doc. 41]  On March 9, 2015, Defendants filed a reply and a notice that briefing was complete on their motion for a stay. [Docs. 44, 45]  Without leave of Court, Plaintiff filed another pleading, styled as a "reply" in support of her request to certify the appeal as frivolous.  [Doc. 47]  On April 2, 2015, the Court issued a Memorandum Opinion and Order granting the motion for a stay.  [Doc. 49]  The Court: referenced Plaintiff's response and "reply" [Docs. 41, 47]; observed that Plaintiff requested the Court to certify the appeal as frivolous and deny a stay because Defendants impermissibly sought review of factual issues; observed that Defendants argued their appeal was not frivolous because it raised a legal issue; and observed that the Tenth Circuit had ordered the parties to file briefs addressing the issue on which Plaintiff based her argument that the appeal was frivolous.  [Doc. 49]  The Court ruled:  "Pursuant to the jurisdictional briefs ordered, the Tenth Circuit will consider the issue on which Plaintiff bases her argument that the appeal is frivolous.  Because the jurisdictional issue is currently before the Tenth Circuit, and because this Court does not want to proceed piecemeal on this case, the Court will grant Defendants' motion for a stay of all proceedings, on all counts, pending the Tenth Circuit's resolution of the appeal."[4]  [Doc. 49, p. 3]

Without articulating a clear legal argument on the point, Plaintiff appears to contend that she lacked sufficient opportunity to conduct discovery.  Plaintiff had from December 17, 2011,

---

[4] Plaintiff complains that her "motion" to certify the appeal as frivolous has never been ruled upon.  [Doc. 90, p. 2] But Plaintiff did not formally file a "motion," instead making a request in her response and in a "reply" filed without specific permission and outside the rules governing motions practice.  [Doc. 47]  The Court nevertheless considered Plaintiff's "reply."  In granting Defendants' motion for a stay, the Court necessarily considered and denied Plaintiff's request to certify the appeal as frivolous and deny the stay.

until the first stay was ordered on June 21, 2013, to investigate her claims.  She filed the original complaint on January 11, 2013, and the first stay was not ordered until June 21, 2013; in the month between Defendants' first motion for a stay and the Court's grant of a stay, Plaintiff filed no response and gave the Court no reason to deny the stay.  After Defendants' second motion for a stay pending their interlocutory appeal, Plaintiff filed a response and also a "reply."   But Plaintiff did not argue in those briefs that she had insufficient opportunity to investigate and develop her claims, and made no argument that the stay should be denied because she needed to conduct discovery.

Plaintiff now asserts that it was not until discovery in October 2015 that she "learned, for the first time, of the true nature and extent of Defendant Sanchez' involvement in this matter." [Doc. 90, p. 2]   "Specifically, Plaintiff learned that Defendant Sanchez had participated in an illegal stop and detention of the vehicle in which Mr. Montes was riding."  [Doc. 90, p. 2]  The FAC "adds claims that the stop and detention of Mr. Montes and the driver, Ms. Anto, was illegal." [Doc. 90, p. 3]  Plaintiff contends that she "could not have known of the true nature and extent of Defendant Sanchez' involvement until Plaintiff was permitted to take discovery, more than two (2) years after the lawsuit was originally filed."  [Doc. 90, p. 3]  Plaintiff contends that Defendants stalled the case.

As the Court understands Plaintiff's argument, she appears to believe that she is entitled to add new claims and a new defendant (Sanchez) because of the stays on discovery ordered well after she filed the original complaint.  But this argument does not respond to the factors critical to the Rule 15(c)(1)(C) argument.  Plaintiff contends that she should be allowed to amend her complaint under the standards of Rule 15(a)(2), but cites no authority that the statutes of limitations can be ignored.  Plaintiff also contends that amendments amplifying or adding claims

generally relate back under Rule 15.[5]  [Doc. 90, p. 5]  Plaintiff's response thus fails to reply on the points critical to relation back when a new defendant is added after expiration of the statutes of limitations.

Plaintiff contends that Defendants stalled, that she lacked sufficient opportunity to conduct discovery, and that she acted diligently to move to amend; these are not the determinative factors under Rule 15(c)(1)(C).  As the Supreme Court stated, a plaintiff's diligence is not relevant under Rule 15(c)(1)(C); instead, the Rule "sets forth an exclusive list of requirements for relation back" and a court errs in considering additional factors.  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 552-53 (2010).

The Court recognizes that Sanchez anticipated an argument by Plaintiff that equitable tolling applies.  [Doc. 79, p. 10]  Plaintiff's response does not articulate an argument or cite authority that this case involves the "rare and exceptional circumstances" warranting equitable tolling.  *Laurson v. Leyba*, 507 F.3d 1230, 1232 (10th Cir. 2007).  Plaintiff contends she was diligent, but, as discussed above, she had Sanchez's affidavit detailing his involvement in the stop and seizure well within the statute of limitations, had long periods of time for discovery, and made no argument that the discovery stays should not be granted on the ground that she needed to conduct more discovery before the statutes of limitations expired.  If Plaintiff intended to argue for equitable tolling, she has not carried her burden to show both that she acted diligently and that some "extraordinary circumstance stood in [her] way."  *Yang v. Archuleta,* 525 F.3d 925, 928 (10th Cir. 2008) (internal quotation marks omitted); *see Crostley v. Lamar Cty.*, 717 F.3d 410, 421 (5th Cir. 2013) (holding that equitable tolling did not apply to allow amendment adding new defendant to relate back, because appellants "having been unaware of certain

---

[5] It appears clear that Plaintiff intends to make this argument under Rule 15, despite her reference to Rule 16.  [Doc. 90, p. 5]

information before [new party's] deposition did not amount to an 'extraordinary circumstance' as the doctrine requires").

The Court concludes that Plaintiff's arguments on discovery stays and diligence do not support relation back to the date of the original complaint.

**(2) Relation back**

**(a)  Claims asserted against Sanchez**

To decide whether the amendments relate back, the Court must first determine what claims Plaintiff seeks to assert against Sanchez in the FAC.

The original complaint alleges the following facts:

> 4.  On December 17, 2011, the Individual Defendants were involved in a traffic stop of a vehicle driven by Plaintiff's Decedent, Mr. Montes, and a passenger in the vehicle, Ms. Jessica Anto, within the City of Las Cruces, New Mexico.
>
> 5.  During the stop, the Individual Defendants placed Mr. Montes in investigative detention, during which time they removed him from the vehicle and placed him in handcuffs.
>
> 6.  Mr. Montes then got up and tried to run away from the scene.  As he ran, handcuffed, the individual Defendants shot and killed him.

[Doc. 1, p. 2]  The FAC essentially repeats these three paragraphs[6] and adds the following factual allegations:

> 5.  Specifically, Defendant Sanchez, and other officers, were advised that the occupants of the Anto vehicle might have been involved in some type of altercation at a nearby apartment.  Approximately six (6) minutes before the incident in question took place, radio traffic announced that there was no evidence of any fight or altercation at the apartment.
>
> 6.  Neither Defendant Sanchez, nor any other law enforcement officer, witnessed the occupants of the Anto vehicle commit any misdemeanor or other crimes prior to the time the Anto vehicle was stopped.

---

[6] The FAC, however, changes Paragraph 4 to allege that Anto was driving and Montes was the passenger.

> 7.  Despite the fact that no law enforcement officer had witnessed anyone in the Anto vehicle commit any crime, Ms. Anto was removed from the vehicle against her will, was handcuffed by Defendant Sanchez and placed into his unit.

[Doc. 71, p. 2]  The original complaint alleges generally that "the individual Defendants shot and killed" Montes.  The FAC left this allegation unchanged, but does not specifically allege that Sanchez shot Montes—merely adding him as a Defendant.

The original complaint asserted under Count I, entitled "Constitutional Violations Which Caused the Death of Robert Montes," that the individual Defendants unconstitutionally used deadly force.  [Doc. 1, pp. 2-3]  The FAC adds the following new claims under Count I:

> 15.  The decision to restrain and effectively arrest Robert Montes and Jessica Anto, at the time of the initial stop of the Anto vehicles [sic] was, *per se*, unconstitutional under the Fourth and Fourteenth Amendments of the United States Constitution.  None of the individual Defendants had witnessed anyone in the Anto vehicle commit any crime.

> 16.  All force that was used after the Anto vehicle was unconstitutional stopped [sic] was also, *per se*, unconstitutional as the initial stop was unjustified under any stretch of reasonable legal imagination.

[Doc. 71, pp. 3-4]

The original complaint asserted under Count II a claim that the "decision of the Individual Defendants to use deadly force under the circumstances was grossly negligent."  [Doc. 1, p. 3, ¶ 13]  The FAC adds the following new claim under Count II:

> 19.  Additionally, pursuant to Section 41-4-12 of the New Mexico Tort Claims Act, the Individual Defendants and the City of Las Cruces are liable for the attendant violations of Mr. Montes' constitutional rights including, but not limited to, the decision to pull over the Anto vehicle, restrain both he and Ms. Anto and subsequently shoot Mr. Montes as he attempted to run away in handcuffs after an illegal stop, search and seizure.

[Doc. 71, p. 4, ¶ 19]

Plaintiff's response states that she did not know "the true nature and extent of Defendant Sanchez' involvement in this matter" until discovery in October 2015, when "Plaintiff learned

13

that Defendant Sanchez had participated in an illegal stop and detention of the vehicle in which Mr. Montes was riding."  [Doc. 90, p. 2]  Plaintiff's response explains that the FAC therefore "adds claims that the stop and detention of Mr. Montes and the driver, Ms. Anto, was illegal." [Doc. 90, p. 3]  The response states that "[i]n addition to the wrongful shooting/execution of Mr. Montes," the FAC "also asserts that the Defendants, including Defendant Sanchez, had no justifiable or constitutional reason to detain the vehicle or its occupants."  [Doc. 90, p. 3]

The FAC generally alleges that the "Individual Defendants" used deadly force and shot Montes.  The Court notes that affidavits from the original three Defendants, Froats, Bradley, and Austin,[7] state that they shot at Montes.  [Docs. 19-1, 19-2, 19-4 (filed 5/21/13)]  The affidavit from Sanchez states that he unholstered his gun "with the intent of engaging Robert Montes" but does not state that he actually fired a shot.  [Doc. 19-3 (filed 5/21/13)]  Sanchez's motion asserts that:  he unholstered his service weapon, but did not fire at Montes; and "[e]xcept for some imprecise language in the [FAC] naming Sanchez as one of the 'Individual Defendants' that fatally injured Montes, it has been undisputed in this lawsuit that Sanchez did not use *any* force *at all*."  [Doc. 79, pp. 8-9]  Plaintiff's response does not dispute these assertions.  But of course what is relevant for the Court is what Plaintiff alleges; if the FAC alleges that Sanchez fired at or shot Montes, the Court must accept this allegation as true under the standard for deciding a motion to dismiss.

But, as the Court understands Plaintiff's position and the FAC's claims against Sanchez, Plaintiff is not alleging that Sanchez used deadly force and shot Montes.  The Court believes that the statements referenced above from Plaintiff's response confirm that the FAC is intended to add new claims against Sanchez of an unconstitutional stop and seizure—but not to allege that Sanchez shot at Montes.  Plaintiff's complaints are not models of clarity, however; the Court

---

[7] These affidavits were attached to *Defendants' Motion for Qualified Immunity and Summary Judgment*.  [Docs. 18, 19 (filed 5/21/13)]

assumes that Plaintiff would promptly inform the Court if the FAC were intended to allege that Sanchez shot at Montes and to assert claims of use of deadly force against Sanchez.

If, however, the FAC were intended to allege that Sanchez used excessive force and deadly force, the Court would grant Sanchez's motion to dismiss on the alternative ground argued by Sanchez under Rule 12(b)(6). [Doc. 79, pp. 13-14] The FAC merely makes a general and imprecise allegation that "Individual Defendants" used deadly force and excessive force. This general allegation, unsupported by factual allegations showing how Sanchez violated Montes's constitutional rights, is insufficient. "Where, as here, the plaintiff names several individuals as defendants, 'the complaint [must] make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her.'" *Schell v. Evans*, 550 Fed. Appx. 553, 556-57 (10th Cir. 2013) (unpublished) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). "The complaint must also demonstrate personal involvement on the part of each individual." *Id.* The FAC, however, does not support the conclusory assertion of use of deadly or excessive force with specific factual allegations about what Sanchez did.

The Court concludes that the FAC is intended to assert claims that Sanchez is responsible for the initial stop and seizure of Anto's vehicle without reasonable suspicion.[8]

**(b) Legal standards for relation back under Rule 15**

The purposes of relation back of amendments are "to balance the interests of the defendant protected by that statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010). "A prospective defendant

---

[8] To the extent that the FAC might be interpreted to assert violation of Anto's rights (in stopping her car, removing her, placing her in handcuffs, and placing her in Sanchez's police unit), Plaintiff cannot assert the rights of a third party.

who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose." *Id*. "But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id*.

Rule 15(c), "**Relation Back of Amendments**," provides:

(1) **When an Amendment Relates Back**.  An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

An amendment adding a new defendant would relate back only if all requirements of Rule 15(c)(1)(C) and Rule 15(c)(1)(B) are satisfied.  *See Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004) (stating that substitution of named defendants for original "John Doe" defendants "amounted to adding a new party," and addressing prior version of Rule, substantially similar to current Rule 15(c)).[9]  The text of Rule 15(c)(1)(C) requires that Rule 15(c)(1)(B) must be satisfied in addition to all parts of Rule 15(c)(1)(C); the Rule uses "and" between each of the

---

[9] *Garrett* involved Rule 15 prior to the 2007 amendment, which was part of the "general restyling of the Civil Rules"; changes were "intended to be stylistic only."  Former Rule 15(c)(2) and (3) are substantially similar to current Rule 15(c)(1)(B) and (C).

requirements.  *See Garrett,* 362 F.3d at 696; s*ee also* Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment.

### (c) Plaintiff's arguments and authority

Plaintiff cites Rule 15(a)(2) for the principle that leave to amend should be freely given. [Doc. 90, p. 4]  But Rule 15(a)(2) does not govern whether an amendment relates back to the time of filing the original complaint.

Much of Plaintiff's cited authority is not relevant to the circumstances of this case, involving the issue of relation back.  [Doc. 90, pp. 4-5]  *See Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1185-87 (10th Cir. 1999) (addressing Rule 15(a)-(b) general policy and holding no abuse of discretion, because no proper motion to amend was made after grant of defendants' dismissal motion; plaintiff not entitled to cure deficiencies in her pleadings); *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 799 (10th Cir. 1998) (holding no abuse of discretion in refusing to permit amendment, when plaintiff had eighteen months to move to amend but only did so in attempt to salvage lost case after trial court's oral grant of summary judgment to defendants); *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (holding no abuse of discretion in denying amendment to add defendants as untimely when plaintiff had been aware of new defendants for more than one-and-one-half years before judgment).

Plaintiff also cites some cases involving the issue of relation back of amendments, but these cases do not support Plaintiff's argument under the circumstances of this case.  [Doc. 90, p. 5]  Plaintiff fails to cite authority, or develop an argument, involving addition of a new defendant under Rule 15(c)(1)(C).  As stated above, all requirements of Rule 15(c)(1)(C) and Rule 15(c)(1)(B) must be satisfied before an amendment adding a new defendant relates back.  *See*

*Garrett*, 362 F.3d at 696; s*ee also* Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment.

In *Powers*, the Eleventh Circuit affirmed the district court's decision that an amendment adding new defendants would not relate back. *Powers v. Graff*, 148 F.3d 1223, 1227-28 (11th Cir. 1998). The Eleventh Circuit determined that the plaintiffs knew of the new defendants and knew of their potential role before the statute of limitations expired, but made a "conscious choice" not to sue those new defendants (seeking to add them only when the plaintiffs learned of the possible insolvency of the company sued). *Id. Powers* contrasted this "deliberate decision" about whom to sue with "the kind of mistaken identity addressed by Rule 15(c)," affirming the district court's decision that "no mistake of identity had been made that would entitle Plaintiffs to relation back under Rule 15." *Id.* at 1228. *Powers* is at best inapposite.

Plaintiff also cites *FDIC v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994). Although *Conner* did involve the issue of relation back, it was decided under the provision currently contained in Rule 15(c)(1)(B)—and did not involve addition of a new defendant. As *Conner* quotes the rule involved, it provides that "an amendment to a complaint will relate back to the date of the original complaint if the claim asserted in the amended pleading arises 'out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" *Conner*, 20 F.3d at 1385 (quoting a prior version of Fed. R. Civ. P. 15(c)(2)). *Conner* distinguished between an amendment seeking to bring entirely different conduct or different transactions or occurrences into a case—when relation back is not allowed, from an amendment seeking "to correct a technical difficulty, state a new legal theory of relief, or amplify the facts alleged in the prior complaint"—when relation back is allowed. *Id.* The issue is whether a proposed amendment is so substantial that the defendant was not given adequate notice. *Id. Conner* reversed the district court's denial of an amendment, holding that the

amended complaint should relate back because the damage allegedly caused by the additional loans to be added arose out of the same conduct as the damage caused by those loans listed in the original complaint. *Id.* The proposed amendment did not seek to alter the basic focus of the claim and the defendants had not shown prejudice. *Id.* Plaintiff fails to develop an argument under *Conner* that a claim regarding the preceding stop and seizure would satisfy the requirement of current Rule 15(c)(1)(B); at any event, *Conner* does not involve the standards for addition of a new defendant under Rule 15(c)(1)(C).

Similarly, another case cited by Plaintiff concerns only the same "conduct, transaction, or occurrence" requirement under Rule 15(c)(1)(B). [Doc. 90, p. 5] In *Bularz*, the Seventh Circuit held that an amendment adding a new legal theory should have related back, when the new theory was against the same defendant and was based on the same factual allegations of the original complaint. *Bularz v. Prudential Ins. Co.*, 93 F.3d 372, 379 (7th Cir. 1996) (involving amendment adding tortious interference with contract to defamation claim). *Bularz* does not involve the addition of a new party under Rule 15(c)(1)(C).

Plaintiff cites *Wilson* for the proposition that the district court has discretion in determining whether any new claim arises out of the same transaction or occurrence. [Doc. 90, p. 5] But this proposition in *Wilson* was explicitly overruled, with the Second Circuit later holding that "a relation back decision under Rule 15(c)(2) does not involve an exercise of discretion," and is reviewed de novo. *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998), *overruled by Slayton v. Am. Express Co.*, 460 F.3d 215, 227-28 (2d Cir. 2006).

Authority cited by Plaintiff is largely inapposite and unpersuasive.

**(d) Sanchez's arguments and authority**

Sanchez argues that he did not receive notice "within the period provided by Rule 4(m) for serving the summons and complaint." Such notice would have been required within 120

days[10] after expiration of the relevant statutes of limitations—three years under § 1983, or two years under the NMTCA.

To satisfy the requirement of Rule 15(c)(1)(C)(i), Sanchez must have received "such notice of the action that [he] will not be prejudiced in defending on the merits."  Sanchez argues that he did not receive proper notice, because "nothing in the record suggests the Estate served or otherwise provided him a summons and/or complaint."  [Doc. 79, p. 7]  But for purposes of notice under the Rule, "'it is notice and not service that Rule 15(c) requires.'"  *Gilles v. United States*, 906 F.2d 1386, 1390 (10th Cir. 1990) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986)).  The Advisory Committee Notes state that "notice of the institution of the action … need not be formal."  Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment.  Instead, the question is whether a party received such notice "that he would not be prejudiced in defending the action."  *Id*.  Plaintiff argues that Sanchez "was interviewed by the Las Cruces Police Department after this shooting and was clearly put on notice of the potential litigation."  [Doc. 90, p. 5]  Sanchez executed an affidavit on May 21, 2013.  [Doc. 19-3]  As Sanchez notes, however, the original complaint asserted claims only for the use of deadly force and wrongful death; it is arguable that such claims would not give notice of a separate and subsequent claim for an unconstitutional stop of the car and seizure of Montes.  It is not clear that Sanchez could not argue prejudice in defending against that separate claim, raised four years after the stop; the initial extensive investigation may have focused narrowly on events following the stop rather than on what led up to the stop.

But the Court need not decide whether Sanchez received sufficient notice.  As observed above, the FAC would relate back only if all requirements of Rule 15(c)(1)(C) and Rule

---

[10] As Sanchez states, the correct period added for service under Fed. R. Civ. P. 4(m) was 120 days at the relevant time.  Rule 4(m) was amended effective Dec. 1, 2015, to require service within 90 days.

15(c)(1)(B) were satisfied.  *See Garrett*, 362 F.3d at 696; s*ee also* Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment.

The Court concludes, on the undisputed facts, it has not been shown that Sanchez "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity," as required by Rule 15(c)(1)(C)(ii).  As Sanchez argues, the issue is whether Sanchez "knew or should have known that, absent some mistake, the action would have been brought against him."  *Krupski*, 560 U.S. at 549.

The original complaint limits the claims to use of deadly force in shooting and killing Montes.  As discussed above, the Court concludes that the original complaint intended to sue those officers responsible for Montes's death.  This conclusion is supported by:  the title of the original complaint ("Complaint for Wrongful Death, and Punitive Damages Arising from Violations of Decedent's Constitutional Rights"); the factual allegations in the original complaint (lacking allegations about what led to the stop); and the title of Count I in the original complaint ("Constitutional Violations <u>Which Caused the Death</u> of Robert Montes" (emphasis added)).

As Sanchez states, although he was not a party, he submitted an affidavit on May 21, 2013, about his involvement in the case.  Given the limitation of the original complaint to a claim of wrongful death, and given that Plaintiff was aware of Sanchez's involvement at least by May 21, 2013, it was reasonable for Sanchez to believe that Plaintiff did not intend to sue Sanchez.  The Court agrees with Sanchez that, from his perspective, it was reasonable to believe that after he and the other officers had placed their versions of events in the record, Plaintiff allowed the statute of limitations to expire without bringing suit against Sanchez for a different, additional claim.  As the Supreme Court stated, a "prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose."  *Krupski*, 560 U.S. at 550.  On the undisputed facts, Sanchez had no reason to

understand "that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id.*

The Court recognizes that Plaintiff's knowledge of the existence of Sanchez "does not foreclose the possibility that she [made] a mistake of identity about which [Sanchez] should have been aware." *Id.* But Plaintiff does not argue that she made a mistake about Sanchez's identity. Instead, Plaintiff argues that she did not know the nature and extent of Defendant Sanchez's role at the time the suit was filed. [Doc. 90, p. 2] "Specifically, Plaintiff learned [in October 2015] that Defendant Sanchez had participated in an illegal stop and detention of the vehicle in which Mr. Montes was riding." [Doc. 90, p. 2] As Sanchez argues, however, his affidavit makes no mention of observing a crime before his approach to Anto's car, but avers that he responded to assist Bradley in the stop; Sanchez's affidavit provides no independent basis to justify the stop.

In contrast, if Sanchez knew that he had shot at Montes, and knew that Plaintiff did not have this information, then it would be reasonable for Sanchez to understand that "he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Krupski*, 560 U.S. at 550. But, under the circumstances presented to the Court in this case, it was reasonable for Sanchez to believe that Plaintiff intended to sue only those officers who had shot at Montes (which did not include Sanchez), and did not intend to assert a claim of an unconstitutional stop. *Cf. Craig v. United States*, 413 F.2d 854, 857-58 (9th Cir. 1969) (holding that amendment adding (or substituting) defendant Litton did not relate back); 6A Charles A. Wright et al., *Federal Practice & Procedure* § 1498 (explaining *Craig* and stating: "In fact it would not have been unreasonable for Litton, inasmuch as one injured person already had named it in another action, to conclude that the pilot's kin had chosen not to include the company in an action for his wrongful death.").

As the Supreme Court explained, the focus is not on whether the plaintiff knew or should have known that a person was a proper defendant, but instead on whether the prospective defendant "knew or should have known that it would have been named as a defendant but for an error." *Krupski*, 560 U.S. at 548. *Krupski* states that "the plaintiff must show that, within the Rule 4(m) period, the newly named defendant 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Id.* at 545 (quoting Rule 15(c)(1)(C)(ii)). When the original complaint asserted only claims of deadly force and wrongful death, Plaintiff has not shown that Sanchez should have known that Plaintiff would also have brought a different and additional claim of illegal stop and seizure but for a mistake concerning Sanchez's identity.

The comments to Rule 15 refer to correction of a misnomer, misdescription, or misidentification. For purposes of Rule 15(c)(1)(C), the Supreme Court distinguished between a mistake regarding a potential defendant's identity and a deliberate choice not to sue a person:

> We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity.…As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

*Krupski*, 560 U.S. at 549. As Sanchez argues, the Supreme Court recognized that a "prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose." *Krupski*, 560 U.S. at 550.

The Court concludes that the undisputed facts and the procedural history fail to show that Sanchez "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." Sanchez is entitled to the repose provided

by the statute of limitations, which ran as to the FAC's claims against him.   Since the requirement of Rule 15(c)(1)(C)(ii) is not satisfied, the addition of Sanchez as a defendant in the FAC does not relate back to the time of filing the original complaint.

  **(e)  Conclusion on relation back**

  Plaintiff's argument and authority concern only Rule 15(c)(1)(B).   The Court need not reach the issue of whether the claim of illegal stop and seizure arose out of the same conduct, transaction, or occurrence as the shooting, however; as discussed above, all requirements of Rule 15(c)(1)(B) and 15(c)(1)(C) must be satisfied for an amendment adding a new defendant to relate back to the date of filing the original complaint.   Since the Court concludes that Rule 15(c)(1)(C)(ii) is not satisfied, that determination is sufficient to conclude that the claims against Sanchez in the FAC do not relate back.

  The Court will therefore grant Sanchez's motion to dismiss him as a Defendant.


## II.  Survival of a Claim for Illegal Stop and Detention

  Sanchez also argues that the claims against him should be dismissed because a claim for an unconstitutional stop and seizure does not survive Montes's death.   [Doc. 79, pp. 11-13]   He relies on *Oliveros v. Mitchell*, 449 F.3d 1091, 1095 (10th Cir. 2006).   Plaintiff makes no response to this argument.

  In *Oliveros*, Jeremy Blouin was stopped after a high-speed chase; while two police officers were handcuffing and arresting Blouin, Officer Mitchell's handgun discharged, hitting Blouin's hip.  *Id*. at 1092-93.   Six months later, Blouin died in an unrelated incident.  *Id*. at 1093. The personal representative of Blouin's estate filed a complaint including claims for use of deadly force, excessive force, and assault and battery under § 1983 and the NMTCA.  *Id*.   The Tenth Circuit recognized that under the common law, personal tort actions died with the plaintiff or defendant, but New Mexico's survival statute established exceptions—including claims for

wrongful death and personal injuries when the defendant/tortfeasor died.  *Id*. at 1093-94; *see* NMSA 1978, § 37-2-1 (1978).  Recognizing that New Mexico's highest court had not addressed the survivability of intentional tort claims when the injured party died, but declining the motion to certify, the Tenth Circuit determined that the New Mexico Supreme Court would apply the common law rule and would conclude that intentional tort claims do not survive the injured party's unrelated death.  *Id*. at 1094.  The Tenth Circuit thus affirmed the district court's grant of summary judgment to the defendants under the NMTCA on the ground that the intentional tort claims did not survive Blouin's unrelated death.  The Tenth Circuit reached the same conclusion under § 1983—holding that claims of excessive force and unreasonable seizure are premised on intentional conduct, are analogous to intentional tort causes of action, and therefore did not survive Blouin's unrelated death.  *Id*. at 1095.  The Tenth Circuit thus affirmed the district court's grant of summary judgment to the defendants on the § 1983 claims.  *Id*.

Sanchez argues that, according to the FAC's allegations, the claim of illegal stop and detention is unrelated to Montes's death, in the sense critical under the *Oliveros* analysis:  this stop and detention did not cause death.  [Doc. 79, p. 12]  As noted above, Plaintiff made no response to this argument, apparently conceding this point (along with the rest of the *Oliveros* argument).

Although Plaintiff concedes the point, the Court considers an Eleventh Circuit case on the point of whether a tort or § 1983 claim is unrelated to a subsequent death for purposes of the survivability analysis.  The Eleventh Circuit determined that a § 1983 claim for excessive force did not survive the death of Gilliam, when two police officers tasered Gilliam multiple times during a traffic stop.  *Estate of Gilliam v. City of Prattville*, 639 F.3d 1041, 1042-49 (11th Cir. 2011).  After the tasing, Gilliam complained of chest pains and difficulty breathing; he was taken to the hospital within minutes, and he died there about seven hours later.  *Id*. at 1043.  Applying

25

state law on survivorship, under which unfiled tort claims do not survive the death of the putative plaintiff, the Eleventh Circuit observed that when a constitutional violation "actually causes" the injured party's death, a § 1983 claim could be asserted through Alabama's wrongful death statute. *Id*. at 1048.  But temporal proximity between the use of force and death was insufficient to bring the case under that principle; since no admissible evidence was produced that the use of force "actually caused" Gilliam's death, the excessive force claim did not survive.  The Eleventh Circuit therefore reversed the jury verdict in favor of Gilliam's estate.

The Court is persuaded by Sanchez's unopposed argument that causation, rather than mere temporal proximity, is required under the survivability analysis.  The Court concludes that the Tenth Circuit used the term "unrelated" in this sense in *Oliveros*, meaning the New Mexico Supreme Court would hold that a deprivation of constitutional rights which did not cause death does not survive under the NMTCA or § 1983.

Applying the analysis and holding of *Oliveros*, the Court concludes that the FAC's claims of unconstitutional stop and seizure under the NMTCA and § 1983 do not survive Montes's unrelated death.  The Court will grant Sanchez's motion to dismiss those claims against Sanchez under Counts I and II.

## CONCLUSION

The Court will grant Sanchez's motion to dismiss him as a Defendant on the ground that the FAC was filed after expiration of the statutes of limitation and does not relate back to the time of filing of the original complaint.  As an alternative and independent ground, the Court will dismiss the claims against Sanchez of unconstitutional stop and seizure because these claims do not survive Montes's death.  The Court dismisses the claims against Sanchez, with prejudice.

**IT IS THEREFORE ORDERED** that *Officer Jose Sanchez's Motion To Dismiss Amended Complaint* [Doc. 78] is **GRANTED IN PART** and **DENIED IN PART**, as discussed above.

It is further **ORDERED** that the name of "Jose Sanchez" be deleted from the caption of this case.

_____
**UNITED STATES DISTRICT JUDGE**