IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


ELVIA CORDERO, as Personal Representative
of the ESTATE OF ROBERT MONTES,

      **Plaintiff,**

      **vs.**                             **Civ. No. 13-031 JCH/GBW**

**TODD FROATS, PETER BRADLEY, JOSE
SANCHEZ and CODY AUSTIN, Individually
and in Their Official Capacity as Members of
the Las Cruces Police Department, and
CITY OF LAS CRUCES,**

      **Defendants.**


## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on *City of Las Cruces's Motion & Supporting Memorandum To Dismiss Count III's State Law Claim for Lack of Subject Matter Jurisdiction.* [Doc. 80]  Plaintiff filed a Response [Doc. 92], and Defendant City of Las Cruces ("City") filed a Reply [Doc. 99].  Having reviewed the motion, briefs, and relevant law, the Court concludes that the motion should be granted.


## FACTS ALLEGED IN FIRST AMENDED COMPLAINT

The following is a statement of factual allegations in the First Amended Complaint ("FAC").  [Doc. 71]

On December 17, 2011, the Individual Defendants were involved in a stop of a vehicle driven by Jessica Anto, in which Robert Montes was a passenger.

Defendant Sanchez and other officers were advised that the occupants of the Anto vehicle might have been involved in some type of altercation at a nearby apartment.[1]  About six minutes before the stop, radio traffic announced there was no evidence of any fight or altercation at that apartment.  Neither Sanchez nor any other law enforcement officer witnessed Anto or Montes commit any misdemeanor or other crime before the vehicle was stopped.  Despite the fact that no officer had witnessed Anto or Montes commit any crime, Anto was removed from the vehicle against her will, was handcuffed by Sanchez, and was placed in Sanchez's unit.

During the stop, officers placed Montes in investigative detention, during which time they removed him from the vehicle and placed him in handcuffs.  After a short time, Montes got up and tried to run away from the scene.  As he ran, handcuffed, the individual Defendants shot and killed him.

## PROCEDURAL BACKGROUND

Plaintiff filed the original complaint on January 11, 2013, against:  Todd Froats, Peter Bradley, and Cody Austin (current or former employees of the Las Cruces Police Department) in their individual and official capacities; and also against the City of Las Cruces ("City").  [Doc. 1] The original complaint asserted three claims:  (1) Count I—excessive force causing the death of Montes, in violation of his federal constitutional rights; (2) Count II—gross negligence in use of deadly force under the New Mexico Tort Claims Act ("NMTCA"), NMSA 1978, §§ 41-4-1 to -27 (2015); (3) Count III—supervisory liability of the City and spoliation of evidence; and (4) Count IV—an independent claim of punitive damages.  [Doc. 1]

Defendants moved for qualified immunity and summary judgment.  [Doc. 18]  On January 9, 2015, the Court issued a Memorandum Opinion and Order.  [Doc. 34]  The Court denied Defendants qualified immunity, thus denying summary judgment on Counts I and II, and

---

[1] The allegations in this paragraph were not in the original complaint, but were added in the FAC.

denying summary judgment on the same basis with respect to the excessive force claim under Count III.  The Court granted Defendants' motion for summary judgment on Count III with respect to the spoliation of evidence claim.  The Court granted Defendants' motion as to the assertion of punitive damages under Count IV as an independent cause of action; the Court dismissed Count IV as a separate count, but made no ruling on the availability of punitive damages in future proceedings.

Defendants filed for interlocutory appeal on February 9, 2015.  [Doc. 37]  On September 2, 2015, the Tenth Circuit issued an Order dismissing Defendants' appeal for lack of jurisdiction. [Doc. 50]

On December 4, 2015, Plaintiff filed a motion to amend the complaint, adding Sanchez as a Defendant and making additional changes.  [Doc. 65]   Defendants filed a response, stipulating to filing of an amended complaint under the following conditions:  (1) Count III's claim for spoliation and Count IV's claim for an independent cause of action for punitive damages must be removed, based on this Court's January 9, 2015, Memorandum Opinion and Order [Doc. 34]; (2) Officer Sanchez shall not waive any defense by virtue of this stipulation— including any claims based on sufficiency of the complaint, statute of limitations, relation back to the original filing date, or notice under Federal Rule of Civil Procedure 15.  [Doc. 67]  Based on this agreement, the Court issued the *Stipulated Order Granting Plaintiff's Motion To File First Amended Complaint (Doc. 65)*.  [Doc. 70 (filed 1/6/16)]  On January 7, 2016, Plaintiff filed the First Amended Complaint ("FAC").[2]  [Doc. 71]

On February 1, 2016, Defendant Sanchez filed a motion to dismiss the FAC.  [Doc. 78] Contemporaneously with this Memorandum Opinion and Order, the Court is filing a separate

---

[2] The FAC deleted the spoliation claim and Count IV, as stipulated.  The Court notes, however, that an additional undiscussed change was made from the proposed amended complaint [Doc. 65-1] attached to Plaintiff's motion [Doc. 65]; the FAC filed also deleted ¶¶ 22-23 of the proposed amended complaint [Doc. 65-1, p. 5, ¶¶ 22-23].

Memorandum Opinion and Order which grants Sanchez's motion to dismiss him as a Defendant but does not dismiss the FAC itself.

## LEGAL STANDARDS

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction as specifically authorized. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Once a district court has original jurisdiction in the action, it may exercise supplemental jurisdiction over an additional claim that is part of the same case or controversy. *Id.*; *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). When adjudicating a supplemental state law claim, the federal court applies state substantive law. *Gibbs*, 383 U.S. at 726.

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be either a "facial attack" or a "factual attack." *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). A facial attack questions the sufficiency of the complaint's allegations of subject matter jurisdiction; the court must accept the allegations in the complaint as true. *Id*. at 1002.

A factual attack goes beyond the complaint's allegations and challenges the facts upon which subject matter jurisdiction depends; the court may not then presume the truth of the complaint's factual allegations. *Id*. at 1003. In considering a factual attack, the district court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*. The court's consideration of evidence outside the pleadings does not convert such a motion into a Rule 56 motion. *Id*.

## DISCUSSION

### I.  Factual Attack Under Rule 12(b)(1)

The City brought the motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). [Doc. 80]  The court must, however, convert a Rule 12(b)(1) motion into a Rule 12(b)(6) motion or a Rule 56 motion if resolution of the jurisdictional question is intertwined with the merits of the case.  The Tenth Circuit stated in *Holt*:  "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case."  *Holt*, 46 F.3d at 1003.  The Tenth Circuit later clarified this point, explaining:  "'[T]he focus of the inquiry is not merely on whether the merits and the jurisdictional issue arise under the same statute, … [but] whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002) (quoting *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000)).

In *Sizova*, the plaintiff argued that subject matter jurisdiction and the merits were intertwined, so that the defendant's Rule 12(b)(1) motion should have been treated as a Rule 56 motion; the plaintiff argued that the defendant moved for dismissal under Title VII, the same statute under which she asserted her cause of action.  *Id*. at 1324.  The Tenth Circuit rejected this argument, stating that the jurisdictional issue[3] was whether the plaintiff exhausted her administrative remedies, which was "simply not an aspect of her substantive claim of discrimination."  *Id*. at 1325.  In contrast, in *Wheeler* the Tenth Circuit held that a motion under Rule 12(b)(1) to dismiss claims under federal antidiscrimination statutes for lack of subject matter jurisdiction was properly treated as a summary judgment motion, because determination

---

[3] The Tenth Circuit further discussed whether this was a jurisdictional issue at all under the circumstances of that case.  *Sizova*, 282 F.3d at 1325-26.

of whether the plaintiff qualified as an employee under those statutes was both a jurisdictional question and a part of the substantive claims. *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987).

Plaintiff's claim under Count III is that the City is liable under the NMTCA and under § 1983 for the officers' use of excessive force and their decision to use deadly force. The City moves to dismiss the NMTCA claim under Count III.

The motion to dismiss is based on Section 41-4-16 of the NMTCA, which provides that no court has jurisdiction unless notice has been given as required under that section. The City's argument is that this Court lacks jurisdiction because the required notice was not given. The NMTCA thus contains the statute on which subject matter jurisdiction depends and also the statute on which Plaintiff's substantive claim depends. But, as the Tenth Circuit clarified in *Sizova*, the issue is not merely whether the same statute is involved, but "whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" *Sizova*, 282 F.3d at 1324 (quoting *Pringle*, 208 F.3d at 1223). The Court concludes that the jurisdictional question here is not intertwined with the merits of the case. Whether the City had notice under Section 41-4-16 of the NMTCA is not an aspect of Plaintiff's substantive claim of excessive force. Plaintiff does not contend otherwise, and does not argue that the motion should be treated as a motion under Rule 12(b)(6) or Rule 56.

The Court concludes that the City's motion constitutes a factual attack under Rule 12(b)(1). In deciding this motion under Rule 12(b)(1), the Court does not presume the truth of the FAC's factual allegations and has "wide discretion" to consider affidavits or other documents in resolving disputed jurisdictional facts. *See Holt*, 46 F.3d at 1002-03. The Court may consider

6

evidence on the notice issue, including the letter attached as Exhibit A to the City's motion.

[Doc. 80-1]

## II.  Notice Under the NMTCA

Count III asserts "Supervisory Liability Claims" against the City:

> 21.  The constitutional deprivations committed by the Individual Defendants were the result of the policies, practices and procedures of the Las Cruces Police Department.
> Specifically, for many years the Las Cruces Police Department has known of numerous, and often lethal, applications of lethal force by its officers.  In each and every instance known, the officers are never disciplined and are never given any additional training to prevent or discourage their conduct.

> 22.  With respect to Plaintiff's claims of constitutional deprivation, Defendant City of Las Cruces is vicariously liable for all of the actions of the Individual Defendants.  With regard to Plaintiff's tort claims, Defendant City of Las Cruces is subject to vicarious liability as a matter of New Mexico law and the New Mexico Tort Claims Act.

[Doc. 71, pp. 4-5]   As the Court previously recognized, Count III asserts that the City is

"vicariously liable" on two claims:  (1) the claim of excessive force under § 1983, and (2) the

claim under the NMTCA of grossly negligent use of deadly force.  [Doc. 34, pp. 16-17]

The City moves to dismiss Count III's claim under the NMTCA, arguing that the Court

lacks subject matter jurisdiction because the City was not given notice of the claim as required

by Section 41-4-16 of the NMTCA:

§ 41-4-16.  Notice of claims

A. Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality, the superintendent of the school district for claims against the school district, the county clerk of a county for claims against the county, or to the administrative head of any other local public body for claims against such local public body, within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

B. No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence. The time for giving notice does not include the time, not exceeding ninety days, during which the injured person is incapacitated from giving the notice by reason of injury.

C. When a claim for which immunity has been waived under the Tort Claims Act is one for wrongful death, the required notice may be presented by, or on behalf of, the personal representative of the deceased person or any person claiming benefits of the proceeds of a wrongful death action, or the consular officer of a foreign country of which the deceased was a citizen, within six months after the date of the occurrence of the injury which resulted in the death; but if the person for whose death the claim is made has presented a notice that would have been sufficient had he lived, an action for wrongful death may be brought without any additional notice.

Compliance with the notice requirement can be shown either by written notice under Subsection A or by "actual notice" under Subsection B.

The City argues that the deadline for notice was March 16, 2012—ninety days after Montes's death on December 17, 2011.  [Doc. 80, p. 4]  Plaintiff argues that the applicable subsection is Section 41-4-16(C), requiring notice within six months of a claim for wrongful death.  [Doc. 92, p. 2]  If notice was required within six months, notice was required by June 17, 2012.

The City argues that Plaintiff failed to give timely written notice under Section 41-4-16(A).  The City attaches to its motion a copy of a letter dated October 9, 2012, from Plaintiff's counsel to the City Manager.  [Doc. 80-1]  The Court notes that this letter states the wrong year for Montes's death:  December 17, 2010.  The letter states that its purpose is to put the City on formal notice of the claim under the NMTCA.  But the letter was almost four months too late to constitute written notice complying with Section 41-4-16.  Plaintiff does not dispute this conclusion, or present any evidence of earlier written notice.

The City further argues that it did not have "actual notice" under Section 41-4-16(B).  In response Plaintiff argues that the City did have actual notice.

The purpose of the notice requirement "'is to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit.'"  *Lopez v. State*, 1996-NMSC-071, ¶ 7, 930 P.2d 146, 149 (quoting *New Mexico State Highway Comm'n v. Ferguson*, 1982-NMSC-107, ¶ 7, 652 P.2d 230, 231).  "Notice under Section 41-4-16(B) 'means the particular agency that caused the alleged harm must have actual notice before written notice is not required.'"  *Id.* (quoting *Ferguson*, 1982-NMSC-107, ¶ 6, 652 P.2d at 231).  Notice allows the governmental entity to investigate the facts while they are still fresh, question witnesses, and "protect itself against false or exaggerated claims while also permitting it to identify and settle meritorious claims."  *Id.* ¶ 8, 930 P.2d at 149.  The notice provisions "thus further the legislative policy of limiting the sphere of government liability."  *Id.*  "As a general rule, whether or not notice has been given or received is a question of fact to be determined by the trier of fact."  *Smith v. State ex rel. New Mexico Dep't of Parks & Recreation*, 1987-NMCA-111, ¶ 15, 743 P.2d 124, 127.

The New Mexico Supreme Court holds that actual notice under the NMTCA means notice of the tort, not merely notice of the occurrence:

> Subsection 41–4–16(A) clearly states the legislature's intent that the governmental entity against which a claim is being made must be given *written notice* of the alleged tort. Subsection 41–4–16(B) creates an exception to this requirement where the governmental entity allegedly at fault had *actual notice* of the tort. The purpose of Subsections 41–4–16(A) and (B) is "to ensure that the agency allegedly at fault is notified that *it may be subject to a lawsuit*." *Ferguson*, 98 N.M. at 681, 652 P.2d at 231 (emphasis added).

*City of Las Cruces v. Garcia*, 1984-NMSC-106, ¶ 5, 690 P.2d 1019, 1021 (emphasis in original).

In 1996, the New Mexico Supreme Court emphasized these principles from *Garcia*:

> In *City of Las Cruces v. Garcia* we held that actual notice for purposes of the Tort Claims Act means actual notice of the tort.  102 N.M. 25, 27, 690 P.2d 1019,

1021 (1984). In that case the City traffic department received a copy of a police accident report. We reviewed the report and "found nothing in it which would inform or notify the City traffic department that it may be subject to a lawsuit." *Id*. *Receipt* of a police report could provide actual notice "only where the report contains information which puts the governmental entity allegedly at fault on notice that *there is a claim against it*," thereby satisfying the statutory purpose "'to ensure that the agency allegedly at fault is notified that *it may be subject to a lawsuit*.'" *Id*. (quoting *New Mexico State Highway Comm'n v. Ferguson*, 98 N.M. at 681, 652 P.2d 230 at 231 (alteration in original)); *see also Frappier v. Mergler*, 107 N.M. 61, 64, 752 P.2d 253, 256 (Ct.App.1988); *Smith*, 106 N.M. at 372, 743 P.2d at 128.

*Lopez*, 1996-NMSC-071, ¶ 9, 930 P.2d at 149-50.  The New Mexico Court of Appeals stated that, although the statute could be read to require only notice of the occurrence, it is "firmly established that the notice required is not simply actual notice of the occurrence of an accident or injury but rather, actual notice that there exists a likelihood that litigation may ensue."  *Dutton v. McKinley Cty. Bd. of Comm'rs*, 1991-NMCA-130, ¶ 9, 822 P.2d 1134, 1136 (internal quotation marks omitted).

Section 41-4-16(B) provides that a court lacks subject matter jurisdiction unless the notice requirement has been satisfied:  "No suit or action … shall be maintained and no court shall have jurisdiction to consider any suit or action unless notice has been given as required by this section, or unless the governmental entity had actual notice."  The question of whether there was actual notice "is a jurisdictional question and separate from the ultimate issue of liability"; it "is a threshold inquiry to be resolved by the court."  *Lopez*, 1996-NMSC-071, ¶ 16, 930 P.2d at 151 (addressing a summary judgment motion).  "Unless the public entity has been given notice as required in Section 41-4-16(A) or unless the public entity had 'actual notice of the occurrence[,]' a court is jurisdictionally barred from considering the matter."  *Herald v. Bd. of Regents of UNM*, 2015-NMCA-104, ¶ 49, 357 P.3d 438, 449, *cert. denied*, 2015-NMCERT-009.

The statute limits this Court's supplemental jurisdiction, which cannot be greater than a New Mexico state court's jurisdiction.

Plaintiff argues in her response that the City "had more than 'actual notice' regarding the facts and circumstances of the shooting death" of Montes and—more to the point—that the City "knew of this occurrence <u>and the potential for litigation</u> almost immediately after Mr. Montes was shot and killed." [Doc. 92, pp. 1-2 (emphasis added)]  As discussed above, Plaintiff was required to show, not merely that the City had actual notice of the shooting death, but actual notice of the likelihood of litigation.  Plaintiff argues that the City extensively investigated the shooting:  "The City has produced hundreds, if not over a thousand pages of documents and investigative materials generated shortly after the shooting, and well within the one hundred eighty (180) day notice period provided by § 41-4-16(C).[1]"  [Doc. 92, pp. 2-3]   Footnote 1 states:

> [1]At the Court's request, Plaintiff will provide copies of all of the Las Cruces Police Department's internal investigation documents and other law enforcement agencies investigation documents with the understanding that these documents will far exceed the maximum amount of exhibits permitted under D.N.M.LR-Civ. 10.5.

This response does not satisfy Plaintiff's burden.[4]  Instead, it was Plaintiff's burden to present with her response affidavits or other evidence to establish that the Court has subject matter jurisdiction:

> It is the burden of the complainant to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute.  A Rule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence

---

[4] Nor would Plaintiff have carried her burden by simply handing to the Court copies of all of the Las Cruces Police Department's documents.  *See* D.N.M.LR-Civ. 10.5.  It is not the Court's role to plow through a thousand pages of documents and determine whether an argument for Plaintiff could be articulated based on those documents.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

>properly before the court.  It then becomes necessary for the party opposing the motion <u>to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.</u>

*New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (emphasis added; citation and internal quotation marks omitted) (addressing ripeness challenge under Rule 12(b)(1)).  The City's motion challenged the Court's jurisdiction, relying on a letter attached as an exhibit.  In opposing the motion, it was then necessary for Plaintiff to present affidavits or evidence to the Court.  Plaintiff's conclusory and unsupported allegation, without presentation of any supporting affidavits or evidence, is insufficient to carry her burden to establish that the Court has subject matter jurisdiction over Count III.  *Id.*; *see McDonald v. Corr. Corp.*, 181 F. Supp. 2d 1274, 1279 (D.N.M. 2002).  For this reason alone, the Court grants the City's motion to dismiss.

An additional reason to grant dismissal is that the mere existence of extensive investigation by the City is not enough to show that the City had actual notice, as Plaintiff appears to assume.  *Lopez* sets forth the standards to determine whether there was actual notice. New Mexico courts apply the "likelihood that litigation may ensue" standard by "looking at whether, from the totality of the circumstances known to the governmental entity charged with fault in the occurrence, a reasonable person would have concluded that the victim may claim compensation."  *Lopez*, 1996-NMSC-071, ¶ 12, 930 P.2d at 150.

As Plaintiff observes, it is not required that a claimant say, "I am going to sue."  *Id.* ¶ 15, 930 P.2d at 151.  Instead, when "the governmental entity allegedly at fault has knowledge of the facts and circumstances of the occurrence, it may also have knowledge of its own potential liability."  *Id.*  In *Lopez*, the New Mexico Supreme Court discussed a number of cases involving summary judgment, contrasting one case which could support a reasonable inference of the

likelihood of litigation from a number of cases that could not; these cases show that the mere

existence of reports or investigation are not sufficient without an indication of impending lawsuit

or fault.  *Id.* ¶¶ 9-14, 930 P.2d at 149-51.  *Compare Smith v. State ex rel. Dep't of Parks &*

*Recreation*, 1987-NMCA-111, ¶¶ 13-21, 743 P.2d 124, 127-28 (holding actual notice could be

inferred when claimant's affidavit stated he spoke to state park superintendent and boating

supervisor, informing them both that the drownings occurred and that Parks and Recreation

Commission might be subject to a lawsuit), *with Marrujo v. New Mexico State Highway Transp.*

*Dep't*, 1994-NMSC-116, ¶¶ 25-27, 887 P.2d 747, 761 (holding no actual notice when two police

accident reports did not suggest a tort had occurred or a lawsuit was impending), *City of Las*

*Cruces v. Garcia*, 1984-NMSC-106, ¶¶ 6-7, 690 P.2d 1019, 1021 (holding that receipt by city's

traffic department of police accident report did not show actual notice, when nothing in report

informed city it may be subject to lawsuit for negligent maintenance of intersection), *Powell v.*

*New Mexico State Highway & Transp. Dep't*, 1994-NMCA-035, ¶¶ 12-18, 872 P.2d 388, 391-92

(holding actual notice not shown when accident report by police did not expressly state injuries

were caused by guardrail or that a claim would be filed or that plaintiff considered accident to be

defendant's fault, even when police report was considered together with discussion between

officer and defendant's foreman about accident and with knowledge blunt-end guardrails are

hazardous), *Frappier v. Mergler*, 1988-NMCA-021, ¶¶ 11-16, 752 P.2d 253, 256-57 (holding

that police report on collision with police officer's vehicle did not show actual notice because it

did not indicate officer was at fault but indicated claimant was responsible), *and Dutton v.*

*McKinley Cty. Bd. of Comm'rs*, 1991-NMCA-130, ¶¶ 8-11, 822 P.2d 1134, 1136 (rejecting

plaintiff's argument that actual notice was shown because "virtually every employee in the

McKinley County building was actually aware of the occurrence" and holding plaintiff failed to present evidence County had actual notice).

The New Mexico Supreme Court distinguished the circumstances in *Lopez* from these cases. In *Lopez*, "the very agency Lopez claims to be at fault—Metro Court—prepared one of the reports" of the plaintiff's fall in a courtroom and sent the accident report to "Risk Management—whose statutorily-prescribed duties include the compromise, adjustment, settlement, and payment of claims." *Lopez*, 1996-NMSC-071, ¶ 13, 930 P.2d at 150. The New Mexico Supreme Court stated that this fact distinguished the case from *Marrujo* and *Powell*, "in which accident reports prepared by police and sent to the potentially liable Highway Department were held to be insufficient to have provided actual notice." *Id.* "[T]he fact that the government agency allegedly at fault sent a detailed report to an agency charged with settling claims supports an inference that Metro Court recognized a likelihood of suit." *Id.* ¶ 14, 930 P.2d at 151. In addition, the level of detail in the reports "indicates that Metro Court understood Lopez might file a claim." *Id.* ¶ 13, 930 P.2d at 150. Because *Lopez* involved a summary judgment motion, the New Mexico Supreme Court concluded that a reasonable inference of the likelihood of litigation "may" arise under the circumstances and reversed the grant of summary judgment for the defendant. *Id.* ¶ 15, 930 P.2d at 151. *Lopez* thus is distinguished from the cases lacking actual notice; *Lopez* involves unusual circumstances—in particular, the fact that the report was sent to Risk Management, the agency that would handle litigation (and the agency designated to receive written notice under Section 41-4-16(A)).

In a recent case, the New Mexico Court of Appeals held that the plaintiff's report of an alleged rape to UNM officials in charge of the residency program constituted merely actual notice of the occurrence and not actual notice to the UNM Board of a likelihood that litigation

may occur; therefore, the district court properly dismissed the NMTCA claims.  *Herald v. Bd. of Regents of UNM*, 2015-NMCA-104, ¶¶ 6, 48-51, 357 P.3d 438, 441, 449; *see also Cobos v. Dona Ana Cty. Hous. Auth.*, 1995-NMCA-132, ¶ 14, 908 P.2d 250, 254 (holding defendant's knowledge of fire and possible causes did not constitute actual notice, when claimant informed Housing Authority both that there was a fire and there was no smoke alarm but did not say she contemplated litigation and did not specifically inquire about potential liability), *rev'd on other grounds*, 1998-NMSC-049, 970 P.2d 1143.

Plaintiff's case appears to be similar to the many cases rejecting claims of actual notice, and to be distinguished from *Lopez* on critical points.  Plaintiff's response refers to investigations conducted by law enforcement agencies, not by the City; this circumstance shows similarity to *Marrujo* and *Powell*, not *Lopez*.  Plaintiff does not suggest involvement by an agency similar to Risk Management; the fact that reports were sent to Risk Management was a significant factor in *Lopez*'s conclusion.  Plaintiff does not suggest that the investigatory reports included any recognition of potential liability—another significant factor in *Lopez*.  The mere fact of investigation does not show that a governmental entity believes it is liable for any tort.  The New Mexico Supreme Court explained in *Marrujo*:  "There was nothing in the reports to distinguish this case from the many other traffic fatalities in New Mexico in which the State is blameless and the driver or a private party is completely at fault."  *Marrujo*, 1994-NMSC-116, ¶ 25, 887 P.2d at 761.  As demonstrated by the cases discussed above, the mere fact that investigations are undertaken and reports are written is not enough by itself to show actual notice.

Plaintiff's response argues that Montes's shooting death "was fully and completely investigated" and that it "is painfully obvious" that the City was "guarding against the possibility of civil litigation and garnered all available evidence to defend themselves in the event that

litigation did in fact ensue." [Doc. 92, pp. 3-4] Plaintiff appears to improperly suggest that if the City is not prejudiced, this claim can proceed. The Court recognizes that one underlying purpose of the notice requirement is to allow the governmental entity to investigate. *Lopez*, 1996-NMSC-071, ¶ 8, 930 P.2d at 149. But the New Mexico statute does not require a showing that all of its underlying purposes are met in each case. The New Mexico Legislature could have set forth a balancing test, requiring a showing of prejudice. But it did not do so. Instead, Section 41-4-16 provides that no court shall have jurisdiction to consider any suit if the notice requirements are not met. The question for this Court is whether there was actual notice—not whether there would be prejudice. Whether an underlying purpose of the notice requirement is met is not a decision for this Court to make in this case.

Plaintiff's response also argues that dismissal of Count III "would be futile insofar as the notice requirements of this Section do not apply to any claims brought under the Tort Claims Act against individual defendants," and "the City will be equally liable" because all of the named individual Defendants were employees of the City's police department. [Doc. 92, pp. 1, 4] The Court agrees that the notice requirements do not apply to claims brought against the individual Defendants, but disagrees with Plaintiff's statement that the City will be "equally liable" merely based on the employment relationship. Count III asserts a separate and distinct claim of supervisory liability.

## CONCLUSION

The Court concludes that the City is entitled to dismissal because Plaintiff failed to carry her burden to present affidavits or other evidence to establish that the Court has subject matter jurisdiction, in response to the City's factual attack under Rule 12(b)(1). Since the Court lacks jurisdiction, it must dismiss Count III's claim under the NMTCA without prejudice. Count III's

16

claim under § 1983 remains in the case.  An additional and alternative basis for the Court's decision is that the mere existence of extensive investigation by the City is not enough by itself to show that the City had actual notice.

IT IS THEREFORE ORDERED that *City of Las Cruces's Motion & Supporting Memorandum To Dismiss Count III's State Law Claim for Lack of Subject Matter Jurisdiction* [Doc. 80] is **GRANTED** and the state law claim under Count III is **DISMISSED** without prejudice.

_____
**UNITED STATES DISTRICT JUDGE**