# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ELVIA CORDERO, as Personal Representative
of the ESTATE OF ROBERT MONTES,

      Plaintiff,

    vs.                              Civ. No. 13-031 JCH/GBW

TODD FROATS, PETER BRADLEY, and
CODY AUSTIN, Individually and in Their
Official Capacity as Members of the Las Cruces
Police Department, and CITY OF LAS CRUCES,

      Defendants.


## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on *City of Las Cruces's Motion and Supporting Memorandum for Partial Summary Judgment on Count III of Plaintiff's Amended Complaint.* [Doc. 111]  Plaintiff filed a response [Doc. 113], and Defendant City of Las Cruces ("City") filed a reply [Doc. 116].  Having reviewed the motion, briefs, evidence, and relevant law, the Court concludes that the motion should be granted.


## FACTS ALLEGED IN FIRST AMENDED COMPLAINT

The following is a statement of factual allegations in the First Amended Complaint ("FAC").[1]  [Doc. 71]

---

[1] The Court notes that the "Introduction" section of the City's motion relates a different set of facts, as observed in Plaintiff's response.  [Doc. 111, pp. 1-2; Doc. 113, pp. 1-2]  To the extent that there are any relevant facts not established as undisputed, the Court views those facts in the light most favorable to Plaintiff.  Thus, although the City's Introduction relates that Montes retrieved a gun and shot at officers, the Court does not accept those allegations for purposes of resolving this motion.  The Court notes that the City does state that it assumes for purposes of the current motion that a constitutional violation occurred, though "vehemently" denying it.  [Doc. 111, p. 4 n.3]

On December 17, 2011, the individual Defendants were involved in a stop of a vehicle driven by Jessica Anto, in which Robert Montes was a passenger.

Officer Jose Sanchez and other officers were advised that the occupants of the Anto vehicle might have been involved in some type of altercation at a nearby apartment.[2]  About six minutes before the stop, radio traffic announced there was no evidence of any fight or altercation at that apartment.  Neither Sanchez nor any other law enforcement officer witnessed Anto or Montes commit any misdemeanor or other crime before the vehicle was stopped.  Despite the fact that no officer had witnessed Anto or Montes commit any crime, Anto was removed from the vehicle against her will, was handcuffed by Sanchez, and was placed in Sanchez's unit.

During the stop, officers placed Montes in investigative detention, during which time they removed him from the vehicle and placed him in handcuffs.  After a short time, Montes got up and tried to run away from the scene.  As he ran, handcuffed, the individual Defendants shot and killed him.

## PROCEDURAL BACKGROUND

Plaintiff filed the original complaint on January 11, 2013, against:  Todd Froats, Peter Bradley, and Cody Austin (current or former employees of the Las Cruces Police Department) in their individual and official capacities; and also against the City of Las Cruces ("City").  [Doc. 1]  The original complaint asserted three claims:  (1) Count I—excessive force causing the death of Montes, in violation of his federal constitutional rights; (2) Count II—gross negligence in use of deadly force under the New Mexico Tort Claims Act ("NMTCA"), NMSA 1978, §§ 41-4-1 to -27 (2015); (3) Count III—supervisory liability of the City and spoliation of evidence; and (4) Count IV—an independent claim of punitive damages.  [Doc. 1]

---

[2] The allegations in this paragraph were not in the original complaint, but were added in the FAC.

Defendants moved for qualified immunity and summary judgment. [Doc. 18] On January 9, 2015, the Court issued a Memorandum Opinion and Order. [Doc. 34] The Court denied Defendants qualified immunity, thus denying summary judgment on Counts I and II, and denying summary judgment on the same basis with respect to the excessive force claim under Count III. The Court granted Defendants' motion for summary judgment on Count III with respect to the spoliation of evidence claim. The Court granted Defendants' motion as to the assertion of punitive damages under Count IV as an independent cause of action; the Court dismissed Count IV as a separate count, but made no ruling on the availability of punitive damages in future proceedings.

Defendants filed for interlocutory appeal on February 9, 2015. [Doc. 37] On September 2, 2015, the Tenth Circuit issued an Order dismissing Defendants' appeal for lack of jurisdiction. [Doc. 50]

On December 4, 2015, Plaintiff filed a motion to amend the complaint, adding Officer Jose Sanchez as a Defendant and making additional changes. [Doc. 65] Defendants filed a response, stipulating to filing of an amended complaint under the following conditions: (1) Count III's claim for spoliation and Count IV's claim for an independent cause of action for punitive damages must be removed, based on this Court's January 9, 2015, Memorandum Opinion and Order [Doc. 34]; (2) Officer Sanchez shall not waive any defense by virtue of this stipulation—including any claims based on sufficiency of the complaint, statute of limitations, relation back to the original filing date, or notice under Federal Rule of Civil Procedure 15. [Doc. 67] Based on this agreement, the Court issued the *Stipulated Order Granting Plaintiff's*

*Motion To File First Amended Complaint (Doc. 65).*  [Doc. 70 (filed 1/6/16)]  On January 7, 2016, Plaintiff filed the First Amended Complaint ("FAC").[3]  [Doc. 71]

On February 1, 2016, Defendant Sanchez filed a motion to dismiss the FAC.  [Doc. 78]  In a Memorandum Opinion and Order filed May 20, 2016, the Court dismissed Sanchez as a defendant, but did not dismiss the FAC itself.  [Doc. 105]

Elvia Cordero filed an unopposed motion to be appointed personal representative of the estate of Robert Montes for the limited purpose of pursuing this lawsuit under the New Mexico Wrongful Death Act.  [Doc. 109]  The Court filed its order granting the motion and appointing Elvia Cordero as personal representative.  [Doc. 110]

Count III of the FAC asserts two claims against the City:  (1) a claim of excessive force under § 1983, and (2) a claim under the NMTCA of grossly negligent use of deadly force.  On February 1, 2016, the City filed a motion to dismiss the NMTCA claim against the City.  [Doc. 80]  In a Memorandum Opinion and Order filed May 20, 2016, the Court granted the City's motion to dismiss the state law claim under Count III.  [Doc. 106]

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it could have an effect on the outcome of the suit.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party.  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  The court views the

---

[3] The FAC deleted the spoliation claim and Count IV, as stipulated.  The Court notes, however, that an additional undiscussed change was made from the proposed amended complaint [Doc. 65-1] attached to Plaintiff's motion [Doc. 65]; the FAC filed also deleted ¶¶ 22-23 of the proposed amended complaint [Doc. 65-1, p. 5, ¶¶ 22-23].

facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When that party does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim. *Id.* at 671. If the movant satisfies its burden, the burden shifts to the non-movant. *Id.*

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colorado.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The non-movant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671 (internal quotation marks omitted). The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

There is no *respondeat superior* liability under § 1983.  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).  A local government body may be held liable "only for its own unconstitutional or illegal policies and not for the tortious acts of its employees."  *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).  To establish a claim under § 1983 against a local government body for the acts of employees, a plaintiff must prove: (1) that an employee committed a constitutional violation, and (2) that a policy or custom of the government body was the "moving force" behind the constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  There are three elements required to show municipal liability for the constitutional violation:  "(1) official policy or custom, (2) causation, and (3) state of mind."  *Schneider*, 717 F.3d at 769.

> The "policy or custom" requirement may be shown by:
>
> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted); *see Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

The causation element requires the plaintiff to establish that a challenged policy or custom was the "moving force."  *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).  The plaintiff must show that it was "closely related to the violation of the plaintiff's federally protected right."  *Schneider*, 717 F.3d at 770 (internal quotation marks omitted).  It is not

sufficient for a plaintiff to allege that he was harmed and that the harm could have been prevented if the governmental entity did something different in the way of training or supervision. *Connick v. Thompson*, 563 U.S. 51, 67-68 (2011). "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton*, 489 U.S. at 392. It is not sufficient to assert that there were "general deficiencies" in training or supervision; instead, the plaintiff is required to "'identify a specific deficiency' that was obvious and 'closely related' to" the injury. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (emphasis added) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999)); *see Schneider*, 717 F.3d at 769. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program . . . ." *City of Canton*, 489 U.S. at 390-91.

The third element requires the plaintiff to show that an alleged failure to train or supervise amounted to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Thompson*, 563 U.S. at 61 (quoting *City of Canton*, 489 U.S. at 388)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. Ordinarily, a pattern of similar constitutional violations is required to demonstrate deliberate indifference. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion); *Thompson*, 563 U.S. at 62-63 & n.7 (also observing that a "pattern" cannot be established by a number of contemporaneous actions). "In a 'narrow range of circumstances,' however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a

7

violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations."  *Barney*, 143 F.3d at 1307-08 (quoting *Brown,* 520 U.S. at 409; *Canton,* 489 U.S. at 390 n. 10).

## UNDISPUTED FACTS

### I.  The City's Proffer of Undisputed Facts

#### A.  The City's Undisputed Facts

The City proffers as undisputed ten paragraphs of facts.  Although denying that the training and review alleged are adequate, Plaintiff does not dispute what is contained in the City's statement of undisputed material facts, except for Paragraph 8.  The following allegations are therefore undisputed:

1.  The City trains its police officers in the proper use of lethal force.  Not only do officers receive training at the academy, they participate in regular refreshers.

2.  Each of the Officers in this case was trained in the use of force and attended multiple refreshers on the subject.

3.  Officers Bradley and Austin received additional use-of-force instruction as members of the SWAT team.

4.  Before Montes' death, the City trained its officers in the use of lethal force under the objective reasonableness standard set forth in *Graham v. Connor*, 490 U.S. 386 (1989).

5.  Under this standard, officers are trained to assess whether any use of force is reasonable by examining the risk of harm posed by a suspect to the officers and others, the

seriousness of the offense committed, and whether the suspect is actively resisting, fleeing, or attempting to evade arrest.

6.   The City does not train its officers under the reactive control model, although that modality [is] mentioned as one example of a use-of-force paradigm.

7.   The City monitors, reviews, and tracks the use of force within the Department.  If an incident involves "anything more than a compliant handcuffing, it has to be documented in the BlueTeam system," a computer program the Department uses.  Field investigation officers are assigned to photograph the circumstances and an officer's chain of command is required to examine the propriety [of] the use of force along with the Department's Professional Standards Unit.

9.   Officers Austin and Bradley had not deployed lethal force prior to December 17, 2011.

10.  Sergeant Froats was involved in a previous shooting death[4] of a suspect.  He was cleared of any wrongdoing.

**B.  The City's Alleged but Disputed Facts**

Paragraph 8 alleges:   "The City imposes discipline when an officer's use of force is improper.  The City recently terminated two officers for use of excessive force in connection with their assault of a handcuffed man at the detention center."   [Doc. 111, p. 3]   Plaintiff disputes these allegations.  [Doc. 113, pp. 3-4]  The Court therefore does not accept the truth of these allegations.

---

[4] Although the Court is without any additional information, the Court notes that the cited portions of Sergeant Froats's testimony state that he fired and hit the suspect, but that the suspect was not killed.  [Doc. 111-5, 23:15-22]

**II.  Plaintiff's Proffer of Undisputed Facts**

Plaintiff's response sets forth seventeen paragraphs of additional material facts.  [Doc. 113, pp. 4-7]

### A.  Plaintiff's Undisputed Facts

Although disputing at some points their relevance or persuasive value, the City does not seriously dispute the critical allegations of the following:

1.  The City of Las Cruces hired an independent consulting firm which conducted a complete review of its department.

2.   One of the things requested of Dr. Uchida and his team was to provide recommendations regarding LCPD's use of force.

5.  More specifically, Dr. Uchida found the City and LCPD were not measuring or taking officer accountability "seriously," that there was a lack of oversight and a lack of leadership. Higher ranking officers never knew what kind [of] discipline might be imposed because leadership was "ignoring" public complaints.  "It seemed to us that nothing was being done …, no accountability at all."  (excerpts from Doc. 113-1, pp. 4-5 (at 36-37))

6.  Dr. Uchida and his team also recommended that the City implement an independent "Use of Force Review Board," similar to what is used in many other cities, and recommended a transparent police auditor to review citizens' complaints and use of force.

7.  As of 2013, upon review of testimony from LCPD Lt. Scott, who was in charge of training, Dr. Uchida concluded that the City of Las Cruces didn't appear "sincere" in making the changes or in following the key recommendations of his team's report.

Paragraphs 11-17 allege that officers had heard little or nothing of "the Uchida Report." These allegations are supported by Plaintiff's citations.

10

### B. Plaintiff's Alleged but Disputed Facts

Paragraph 3 alleges that Uchida's review "found numerous deficiencies in the Las Cruces police department's policies, procedures and training." [Doc. 113, p. 4] This allegation, and the term "numerous deficiencies," are Plaintiff's conclusions, and do not appear in the cited portion of Uchida's deposition. [Doc. 113-1, p. 4 (at 33-34)] Paragraph 3 also alleges that "Dr. Uchida found the fact that LCPD didn't substantiate any of 75 use of excessive force complaints over a three year period [2006-2008] as <u>almost impossible</u>," (emphasis added) while, as the City correctly points out, the evidence marked and cited by Plaintiff states only that Uchida believed it "highly unlikely." [Doc. 116, p. 2]

Paragraph 4 alleges that Uchida "found that LCPD's failure to use its early intervention system for identifying and addressing problem officers was highly problematic for the Department, indicating a lack of leadership, training and oversight." [Doc. 113, p. 4] As the City points out, the evidence cited in support does not say "highly problematic," and Uchida does not tie non-use of this system to leadership problems as Plaintiff does. [Doc. 116, p. 3]

Regarding Plaintiff's facts proffered in Paragraph 8 (regarding whether Uchida charged for testimony) and Paragraph 9 (regarding LCPD's indifference to Uchida's efforts or attempts to contaminate a survey), the City correctly observes that the pages of the Uchida Report cited in support were not provided. [Doc. 113, p. 5; Doc. 116, p. 3] Plaintiff failed to substantiate Paragraphs 8 and 9, and they will not be considered by the Court.[5]

Paragraph 10 alleges:

> The City's failure of leadership, oversight and training of LCPD officers created a proclivity for excessive use of force by officers. Dr. Uchida opined that it was his and his company's opinion that the City and LCPD had engaged in a pattern and practice of excessive force during the time of his study. (Exhibit 1,

---

[5] The Court notes, however, that even if considered, Paragraphs 8 and 9 would not affect the Court's conclusions and resolution of the motion.

pages 85 and 86).  He went on to explain, at page 91 of his deposition, that this opinion was based on the totality of the information received during the preparation of his report.  (Exhibit 1, page 91).

[Doc. 113, p. 5]  Uchida testified that there was a "pattern and practice within the City of Las Cruces that encourages nonaccountability"—although Uchida stated that he did not write that in his report and he would need to research the matter further ("It wasn't based on the science of what I would want to look for to back up that opinion.").  [Doc. 113-1, p. 9 (at 85-86)]  Although the City contends that in the evidence cited Uchida "does not offer an opinion of a pattern or practice of excessive force at the Department," [Doc. 116, p. 4] the deposition does include the following:

> Q. [by Plaintiff's counsel]  What is the factual basis of your opinion for finding that there was a pattern and practice of excessive force within the City of Las Cruces?
>
> A. [Uchida]  Once again, it really comes down to the totality.
>
> . . . .
>
> A.  I think that, going back to the answer, the holistic approach that we looked at combined with the information that we had received from some of the civilians and the feedback we'd gotten, that's what I based the opinion on.  Again, the data that we had, the limited data that we had, certainly gave me that belief.

Although this testimony is not extremely clear, and is expressly based on "limited data," the Court finds that Plaintiff does identify in Uchida's testimony (although not necessarily in the Uchida Report) the belief that there was a pattern or practice of excessive force.

As discussed above, the evidence cited by Plaintiff does not support every part of Paragraphs 3, 4, and 10 of Plaintiff's proffered facts.  Subject to the limitations discussed, the Court accepts the allegations of Paragraphs 3, 4, and 10.

**DISCUSSION**

The remaining claim against the City under Count III asserts a claim of "supervisory liability" against the City, claiming the City is "vicariously liable for all of the actions of the Individual Defendants."  [Doc. 71, pp. 4-5]  The Court emphasizes that there is no *respondeat superior* liability under § 1983, and the City may be held liable "only for its own unconstitutional or illegal policies and not for the tortious acts of its employees."  *Barney*, 143 F.3d at 1307; *see Schneider*, 717 F.3d at 767.  Plaintiff, however, does assert a *Monell* claim against the City, alleging that:

> 21.  The constitutional deprivations committed by the Individual Defendants were the result of the policies, practices and procedures of the Las Cruces Police Department.  Specifically, for many years the Las Cruces Police Department has known of numerous, and often lethal, applications of lethal force by its officers.  In each and every instance known, the officers are never disciplined and are never given any additional training to prevent or discourage their conduct.

[Doc. 71, pp. 4-5, ¶ 21]

Assuming for purposes of this motion that a constitutional violation occurred,[6] the City argues that none of the City's policies or customs was the moving force behind the alleged constitutional violation and that the undisputed material facts do not establish deliberate indifference.  The City argues that Plaintiff fails to identify any specific deficiency in the City's training and discipline, and fails to show how such deficiency was the cause of Montes's death.

Plaintiff responds that the City, "and through it the Las Cruces Police Department (LCPD), intentionally established and maintained an official custom and policy of deliberate indifference and failure to train which directly led to the death of Robert Montes."  [Doc. 113, p. 1]  Plaintiff relies on the "Uchida Report," stating that it is an independent and comprehensive

---

[6] The City and Officers "vehemently deny violating Montes' constitutional rights" and assume only for purposes of this motion that a constitutional violation occurred.  [Doc. 111, p. 4 n.3]

review of police practices and training commissioned by the City; Plaintiff does not present the Uchida Report as an exhibit, but instead attaches excerpts from a deposition of Uchida in another case (*Hummell v. Rivera*, Civ. No. 11-765 (D.N.M. 2011)).  [Doc. 113-1]  Plaintiff argues that the City's failure to implement the recommendations in the Uchida Report establishes a failure to train and discipline, and a custom and policy of deliberate indifference to citizens' rights. Plaintiff alleges that none of the officers involved in the shooting of Montes had heard of the Uchida Report, and that "the person in charge of training for LCPD [in his latest deposition] casually admitted LCPD hadn't adopted any of the recommended changes."  [Doc. 113, p. 3] Plaintiff argues that the "LCPD exhibits a clear tolerance, and encouragement, of excessive force by its officers," which "percolates from the top down, and gives LCPD officers an absolute belief that their use of force procedures are 'just fine.'"  [Doc. 113, p. 3]

In resolving the City's motion for summary judgment, the Court must assume that the alleged constitutional violation occurred.  The Court concludes that the City has shown that it is entitled to summary judgment on the *Monell* claim under Count III.  Most important, Plaintiff makes only general, conclusory allegations, and fails to identify a "specific deficiency" in the City's training and discipline.  In addition, Plaintiff fails to show that any such deficiency was the "moving force" behind the constitutional violation asserted, or that the City exhibited deliberate indifference.  In reaching these conclusions, the Court accepts Plaintiff's reliance on the Uchida deposition.

As an alternative and independent basis for granting the City summary judgment, however, the Court next concludes that Plaintiff fails to identify admissible evidence in resisting the summary judgment motion.  Plaintiff relies on the Uchida evidence to support her claim under Count III.  In a contemporaneously filed Memorandum Opinion and Order, the Court

14

excludes the Uchida evidence from trial because of Plaintiff's failure to properly disclose this expert evidence. Based on this exclusion, the Uchida evidence will not be admissible at trial and therefore cannot be used to defeat a summary judgment motion. *See Johnson v. Weld Cty.*, 594 F.3d 1202, 1210 (10th Cir. 2010); *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995).

## I. Official Policy or Custom

Plaintiff asserts that the City is liable for a failure to train its officers and a failure to discipline. The City persuasively argues that Plaintiff fails to identify any specific way in which the City's training or discipline was deficient.

"[P]roving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents 'difficult problems of proof,' and [the court] must adhere to a 'stringent standard of fault,' lest municipal liability under § 1983 collapse into *respondeat superior*." *Thompson*, 563 U.S. at 69 (quoting *Brown*, 520 U.S. at 406, 410); *see Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 759 (10th Cir. 2014) (emphasizing that "'rigorous standards of culpability and causation'" apply to ensure municipality is held liable only for its own illegal acts (quoting *Brown*, 520 U.S. at 405)); *Schneider*, 717 F.3d at 770 (stating that "causation element is applied with especial rigor" when claim is based on failure to train or supervise (internal quotation marks omitted)).

"'[T]here are limited circumstances in which an allegation of a "failure to train" can be the basis for [municipal] liability under § 1983.'" *Id.* at 773 (quoting *City of Canton*, 489 U.S. at 387). "'[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Id.* (quoting *City of Canton*, 489 U.S. at 388). "A municipality can be liable where 'the need for more or different training is so obvious, and the inadequacy so

15

likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id*. (quoting *City of Canton*, 489 U.S. at 390).

The undisputed facts show that the City does train its officers in the use of force. The officers received training at the academy and attended multiple refreshers; Bradley and Austin received additional use-of-force instruction as members of the SWAT team. [Doc. 111, p. 2] As the City argues, Plaintiff identifies no evidence to dispute the allegation that the City follows the objective reasonableness framework of *Graham v. Connor*, 490 U.S. 386 (1989), in this training.

Plaintiff fails to carry her burden to withstand the City's summary judgment motion. Plaintiff makes only general, conclusory allegations, and fails to identify a "specific deficiency" in the City's training program. Thus Plaintiff argues that training was deficient because the City "commissioned an independent review of its police practices and training," resulting in the Uchida Report which "is comprehensive in its criticisms and recommendations for improvement needed," and the City did not implement the recommended changes. [Doc. 113, pp. 2-3] Plaintiff's additional factual allegations also include only general and conclusory allegations.

Even assuming that that Plaintiff identified "general deficiencies" in the City's training program, that is not enough. "Rather, [Plaintiff] must identify a specific deficiency in the [City's] training program closely related to [the] ultimate injury, and must prove that the deficiency in training actually caused [the officers] to act with deliberate indifference . . . ." *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999) (emphasis added); *see City of Canton*, 489 U.S. at 391; *see Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). In *Lopez*, the Tenth Circuit held that despite some evidence that jailers at the county facility were poorly trained, the

district court properly granted summary judgment to the county because the plaintiff failed to identify "a specific deficiency." *Lopez*, 172 F.3d at 760.

Similarly, Plaintiff makes only general and conclusory allegations that the City failed to properly discipline its officers.  "Rarely if ever is the failure of a police department to discipline in a specific instance … an adequate basis for municipal liability under *Monell*." *Schneider*, 717 F.3d at 777 (internal quotation marks omitted).  Even considering Plaintiff's allegations based on the Uchida Report, there are only general allegations that there were deficiencies—speculation that some of the seventy-five complaints of excessive force should have been found meritorious, that officer accountability was not taken seriously, and that there was a failure of oversight resulting in "a proclivity for excessive use of force."  [Doc. 113, p. 4, ¶¶ 3, 5, 10]  As the City observes, Uchida testified that he did not actually look at the case files and the civilian complaints, and he fails to identify any specific failure of discipline.  [Doc. 116, p. 5; Doc. 113-1, p. 9 (at 86-87)]

In addition, Plaintiff does not identify for the Court admissible evidence showing that the Uchida evidence is relevant to the date of Montes's shooting in December 2011.  The Uchida Report is based on the years 2006 to 2008.  Uchida testified that he did not look at the LCPD use-of-force curriculum since his report was finalized.  It was Plaintiff's burden, in opposing summary judgment, to "set forth specific facts" and identify those facts in admissible evidence. *Adler*, 144 F.3d at 671; *Wall v. Boone*, 1996 WL 44245, *1 (10th Cir. 1996) (unpublished).[7] Plaintiff does not cite clear evidence that Uchida's testimony relates to a date late enough to be relevant.

---

[7] The Court cites this and other unpublished opinions for their persuasive value.  *See* 10th Cir. R. 32.1(A).

As the City argues, Plaintiff fails to allege specific deficiencies in training and discipline, and fails to explain how the shooting of Montes could have been avoided with different or better training and discipline.  The Court concludes that Plaintiff's general, conclusory assertions that there was inadequate training and discipline, without identification of any specific deficiencies, are not sufficient to withstand the summary judgment motion.  This conclusion alone is sufficient to support the Court's decision to grant the City summary judgment.

## II.  Causation, or Moving Force

To establish causation, Plaintiff must show that a specific deficiency in training or discipline was the "moving force." *Barney*, 143 F.3d at 1307.  A "direct causal link"  must be demonstrated. *Schneider*, 717 F.3d at 770.  "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Id*. (internal quotation marks omitted).

It is not sufficient for a plaintiff to allege that he was harmed and that the harm could have been prevented if the governmental entity did something different in the way of training or supervision. *Thompson*, 563 U.S. at 67-68.  When the City did not directly inflict the injury, "rigorous standards of culpability must be applied to ensure that the municipality is not held liable for actions of its employees." *Brown*, 520 U.S. at 405.  Plaintiff was required to "identify a specific deficiency" in training or discipline, which was "closely related" to the ultimate shooting, and identify evidence that would prove that the deficiency "actually caused" the Defendant Officers to employ excessive force. *Lopez*, 172 F.3d at 760.

A causal connection would be shown if the City "set in motion a series of events" that the City knew or reasonably should have known would cause officers to commit a constitutional

18

violation.  *Schneider*, 717 F.3d at 779.  "Mere speculation that something would have been done to prevent [the plaintiff's] injury is not sufficient to establish causation."  *Schneider*, 717 F.3d at 780.  "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident."  *City of Canton*, 489 U.S. at 392.

Plaintiff has not identified how any policy or custom related to training or discipline was the moving force behind the shooting of Montes.  To survive a summary judgment motion, Plaintiff "must present sufficient evidence to create a genuine issue of material fact as to causation."  *Schneider*, 717 F.3d at 780.  Plaintiff failed to carry her burden to identify evidence that there was "a direct causal link" between the City's training and discipline and the shooting of Montes.  *Brown*, 520 U.S. at 404.

At most, Plaintiff's identification of the Uchida evidence shows that some unspecified additional training or discipline could have been provided.  In addition to the entire lack of specificity, Plaintiff's suggestion that perhaps the shooting could have been avoided if there had been better training or discipline is insufficient:

> But showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability. "[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" will not suffice.

*Thompson*, 563 U.S. at 68 (quoting *City of Canton*, 489 U.S. at 391).  "The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between the training inadequacies alleged, and the particular constitutional violation at issue."  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).

### III.  Deliberate Indifference

Plaintiff was also required to show that the alleged failure to train or discipline amounted to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"  *Thompson*, 563 U.S. at 61 (quoting *City of Canton*, 489 U.S. at 388)).  This "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Brown*, 520 U.S. at 410.

Plaintiff argues that the City "was given clear notice of LCPD's and the City's failings in its use of force policies, supervision and, [sic] its complete failure to implement adequate, independent police oversight."  [Doc. 113, p. 8]  Plaintiff asserts that the circumstances under which the constitutional violation occurred constitute a usual and recurring situation for police officers, and that the City continually refused "to pay any serious attention to the circumstances which culminated in <u>no</u> citizen complaints of excessive force (almost 300) being determined valid."  [Doc. 113, p. 9]  Plaintiff relies on Uchida's evidence to show both that there was a history of violations and that the City exhibited deliberate indifference by failing to implement the recommendations of the Uchida Report.  Plaintiff also relies on the principle that, even if there have been no previous violations, the need for officer training may be "'so obvious, that failure to do so could properly be characterized as deliberate indifference.'"  [Doc. 113, p. 9 (quoting *City of Canton*, 489 U.S. at 390 n.10)]  Plaintiff contends that there was "essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable," and that "[t]his is exactly what Dr. Uchida predicted when he learned, years after he and his team issued their Report and learned it had been essentially ignored."  [Doc. 113, p. 10]  Plaintiff essentially argues that the City's failure to implement the recommendations of the Uchida Report demonstrates deliberate indifference.

20

Plaintiff concludes:  "The Uchida Report put the City on formal notice its entire system for reviewing and deciding when discipline was needed required a complete overhaul," but the City "turned [its] back[] on the Report's finding."  Plaintiff speculates that the City's "attitude clearly carries over to its officers and investigators," which "is the definition of deliberate indifference … which directly created the atmosphere where these officers felt free to shoot Mr. Montes with impunity."  [Doc. 113, p. 11]

The City argues that, as its undisputed facts show, officers do receive training and discipline, and Plaintiff fails to identify evidence of a pattern of similar constitutional violations. Uchida's evidence is too general and conclusory to establish such a pattern.  The City also argues that Montes's death alone does not demonstrate that the need for training is so obvious that a pattern need not be shown.  *See Barney*, 143 F.3d at 1307-08 (stating in "narrow range of circumstances," deliberate indifference may be found if a violation is a "plainly obvious" consequence of failure to train to handle recurring situations).  The City argues that Plaintiff's own authority shows that this exception is reserved for instances in which "'there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable.'"  [Doc. 113, p. 10 (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988)); Doc. 116, p. 7]

Plaintiff essentially relies on the City's failure to implement the Uchida recommendations to show deliberate indifference.  But Plaintiff fails to explain why that "necessarily demonstrates deliberate indifference."  *Porro*, 624 F.3d at 1329.  Plaintiff seems to assume that failure to implement those recommendations constitutes per se proof of deliberate indifference.  The Court concludes that this assumption, based on general and conclusory assertions of deficiencies, is insufficient.

The Court concludes that Plaintiff's general and conclusory assertions that training and discipline were deficient, without identifying specific deficiencies, are insufficient to carry her burden.  Plaintiff fails to show how specific additional or different training and discipline would have prevented Montes's death.  The City is entitled to summary judgment on Count III.

## IV. Admissibility of the Uchida Evidence

In addressing the three elements of a *Monell* claim above, the Court has assumed arguendo that Plaintiff could rely on the Uchida Report, as discussed in the Uchida deposition (in another case, *Hummell*).  Even allowing such reliance, the Court concluded that Plaintiff failed to carry her burden to withstand the summary judgment motion.

The City, however, requests the Court to strike Uchida's deposition because it was not disclosed as required under Federal Rule of Civil Procedure 26.  In a contemporaneously filed Memorandum Opinion and Order, the Court has excluded Uchida's expert evidence because of Plaintiff's failure to disclose under Rule 26(a)(2)(A) and (C).

"A nonmovant must respond to a motion for summary judgment with evidence, and the content or substance of that evidence must be admissible."  *Wall v. Boone*, 1996 WL 44245, *1 (10th Cir. 1996) (unpublished).  Although the evidence can be presented in a form not admissible at trial (i.e., an affidavit or deposition), "'the content or substance of the evidence must be admissible.'"  *Johnson v. Weld Cty.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (quoting *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995)).  Testimony that would be inadmissible at trial does not defeat a summary judgment motion.  *Thomas*, 48 F.3d at 485.

Because the Uchida evidence will not be admissible at trial, Plaintiff cannot rely on the Uchida evidence to withstand the summary judgment motion.  Plaintiff's response to the summary judgment motion is therefore deprived of all support.  As an alternative and

independent ground to grant the City summary judgment, the Court therefore concludes that Plaintiff fails to identify admissible evidence in opposing the summary judgment motion.

**IT IS THEREFORE ORDERED** that *City of Las Cruces's Motion and Supporting Memorandum for Partial Summary Judgment on Count III of Plaintiff's Amended Complaint* [Doc. 111] is **GRANTED**, and Count III is **DISMISSED** with prejudice.

**UNITED STATES DISTRICT JUDGE**